## Jackson v. Dines et al.

1. Trespass — Sufficient Allegations of Possession, Entry and Damage.— In a suit against a railroad company for damages for taking a portion of a mining claim, and cutting timber thereon, a complaint showing an entry without permission on a mining claim in plaintiffs' possession, and the doing an injury to the soil and timber, sufficiently avers possession, entry and damage.

2. Complaint — Averment of Citizenship.— In such case, where the complaint contained no averment of citizenship on the part of plaintiffs, but there was no issue, objection or specific assignment of error in that regard by defendant below, it will not be considered on appeal.

3. Location Certificate — Description of Claim.— A location of a mining claim was by reference to certain " mountain peaks," without naming or describing them. The claim was further described as on a river near a certain city, and the position of a shaft on a certain creek was designated with the bearings of a fall on said creek from the shaft. The certificate showed the state, county and mining district where located. *Held*, it sufficiently complied with Revised Statutes of the United States, section 2324, requiring the record of a mining claim to contain such a description with reference to some natural object as would identify the claim.

4. Trial — Substitution of Receiver for Defendant.— Where a receiver for defendant was substituted for defendant in such action without objection, it was not error to refuse to strike out his name during the trial.

5. Evidence — Proof Required to Show Boundaries of Conflicting Railway Grant.— Act of congress of June 8, 1872, gave the Denver & Rio Grande Railway Company a right of way over the public domain, but did not describe in detail the routes of the main line and branches. *Held* that, in order to determine whether plaintiffs' mining claim was within the limits of the right of way, the charter or some other evidence in relation to the location of the road besides the act of 1872 must be produced.

*Appeal from District Court of Lake County.*

Mr. E. O. Wolcott, for appellant.

Messrs. Thompson & Sayre, for appellees.

Mr. Justice Elliott delivered the opinion of the court.

In November, 1879, the appellees, who were plaintiffs below, located a certain mining lode or claim upon the

public domain in California mining district, Lake county, Colorado, under certain acts of congress, local customs, laws and regulations. In July, 1880, the Denver & Rio Grande Railway Company, the original defendant in this action, entered upon said mining claim and appropriated a certain portion of it as a right of way for the extension and construction of its railroad. The plaintiffs brought this action to recover damages for the taking of said portion of their mining claim and for cutting timber thereon.

The defendant denied the material allegation of the complaint, and also justified the taking of the land for its right of way and the cutting of the timber under certain acts of congress, passed in 1872 and 1877, whereby it was enacted "that the right of way over the public domain, one hundred feet in width on each side of the track, together with * * * the right to take from the public lands adjacent thereto stone, timber, earth, water and other material required for the construction and repair of its railway and telegraph line, be, and the same are hereby, granted and confirmed unto the Denver & Rio Grande Railway Company, * * * its successors and assigns, for the extension and operation of its railway and telegraph lines in and through any contiguous territory of the United States to the northern boundary line of Mexico. * * * "

W. S. Jackson, as receiver of the defendant company, was substituted as a party under an order from the United States circuit court. Upon the trial plaintiffs had a verdict for $800, and, a motion for a new trial being overruled and judgment entered thereon, this appeal is taken.

It is assigned for error that the court permitted any evidence to be introduced in behalf of plaintiffs, and also that judgment was rendered in favor of plaintiffs when the same should have been rendered in favor of defendant. Counsel attempt to maintain these assign-

ments on the ground that the complaint does not state facts sufficient to constitute a cause of action. It is assumed that, the action being in the nature of trespass at common law, the complaint must contain an averment of a wrongful or unlawful entry, *vi et armis, contra pacem, et cetera.*

Though certain formalities are desirable in the records of judicial proceedings, yet the observance of forms and fictions in pleadings are no longer essential. Matters of substance only are to be regarded when parties have joined issue and gone to trial. The complaint shows an entry by defendant without permission from plaintiffs upon their mining claim in their possession, and being improved and developed by them with due diligence, and the doing of damage and injury to the soil and timber thereon, and the filling up of the shaft and tunnel of the mine without the leave of plaintiffs. The possession, entry and damage were sufficiently averred. 2 Wat. Tresp. § 987 *et seq.; Darst v. Rush,* 14 Cal. 82.

It is further contended that the allegations of the complaint are insufficient because it is not averred that plaintiffs, or either of them, were citizens of the United States at the time of the commencement of the action. Generally the capacity of the plaintiff to sue in an ordinary civil action is presumed. Any special disability, such as infancy, coverture, outlawry or alien enemy, must be taken advantage of by special answer. At common law a plea in abatement — sometimes a plea at bar — was the appropriate remedy. Demurrer was of no avail unless the want of capacity appeared on the face of the complaint. The same rule obtains under the reformed procedure. 1 Saund. Pl. 6; 1 Chit. Pl. 462 *et seq.;* Bliss, Code Pl. § 175; *Barclay v. Mining Co.* 6 Lans. 25; *Hudson v. Poindexter,* 42 Miss. 304.

In a special proceeding, such as an adverse suit under the acts of congress, where the purpose of plaintiff is to show himself entitled to a patent from the United States,

proper citizenship on the part of plaintiff should be averred and proved. So it was held by the supreme court of California in *Lee Doon v. Tesh*, 68 Cal. 43. But in the same opinion the court say: "We must not be understood as holding that in all actions in relation to mining claims it is necessary to aver citizenship." In *Mining Co. v. Mining Co.* 1 Fed. Rep. 522, Mr. Justice Sawyer in the United States circuit court charged the jury to the effect that, to. acquire any right of location and purchase of valuable mineral lands of the United States, a party must either be a citizen of the United States, or must have declared his intention. to become such. It does not appear how the issues were framed in that case, except the brief statement of the reporter that it was "an action in the nature of an action of trespass upon a lode mining claim, in which the defendant pleaded title to the *locus in quo;*" but it does appear that the citizenship of one of the locators of the mining claim was controverted on the trial, and evidence was introduced and instructions given in reference thereto.

In the case at bar, so far as appears from the abstract of the record, there was no issue, no controversy, no evidence, no objection or notice whatever interposed in the court below, nor any specific. assignment of error in this court, in regard to the citizenship of the plaintiffs, or either of them. We are of the opinion that such an objection in an action of this kind, to be available, must be interposed in apt time, and in such a way as to give the opposite party an opportunity to defend against it. *O'Reilly v. Campbell*, 116 U. S. 418.

The recorded location of plaintiff's mining claim was objected to, when offered in evidence, on the sole ground that "the description therein is insufficient in law." The description of the claim by reference to its direction from "mountain peaks," without naming or describing them, or stating the distance therefrom, may be insufficient; but the location of the claim is further described

as situated on the Arkansas river, near Tabor city, and that the shaft or cut, one hundred feet from south side line, is on the left bank of a small creek called Chalk creek; also the bearings of perpendicular falls in said creek from the shaft or cut are stated. The certificate further shows the state, county and mining district in which the claim is located, and the metes and boundaries thereof.

The act of congress (R. S. U. S. § 2324) requires that the record of mining claims shall contain "such a description of the claim or claims located by reference to some natural object or permanent monument as will identify the claim." In the case of *Mining Co. v. Mining Co., supra*, it is said: "The natural objects or permanent monuments here referred to are not required to be on the ground located, although they may be, and the natural object may consist of any fixed natural object; and such permanent monument may consist of a prominent post or stake firmly planted in the ground, or of a shaft sunk in the ground." The act further requires that "the location must be distinctly marked on the ground, so that its boundaries can readily be traced." But it is not required that these markings shall be described in the record of such mining claims. No other objection having been made to the offer of the certificate in evidence, we are of opinion that there was no error in overruling the objection.

Mr. W. S. Jackson, receiver of the defendant company, having been substituted as defendant in the action without objection, there was no error in refusing to strike out his name in the midst of the trial.

It is contended by counsel for appellant that plaintiffs cannot lawfully maintain this action for the reason that the grant to the Denver & Rio Grande Railway Company of a right of way over the public domain by the act of congress of June 8, 1872, was an absolute, unconditional grant *in præsenti*, which acquired precision upon the

location of the road as of the date of the act, and that the company by the amendment of 1877 had until June 8, 1882, to locate its line.

It is unnecessary to discuss at length the construction to be given to such a congressional grant, which is said to have the force and effect both of a law and a deed. In *Railway Co. v. Alling*, 99 U. S. 474, Mr. Justice Harlan, delivering the opinion of the court involving the construction of the very act under consideration, says: " Of what the company had done, prior to the passage of the act of 1872, towards effecting the objects of its incorporation, congress, it is fairly to be presumed, was not uninformed.   It was aware, we must also presume, of the routes designated in the charter of the company, for the main road and its several branches; all so connected as to constitute, when completed, an extended railway system for that entire region.   That congress was so informed is quite clearly indicated by the terms employed in the act of 1872.   That act must therefore receive the same construction which would be adopted had it contained a full or detailed description of the routes of the main line and branches.   In this view, and having due regard to all the circumstances and condition of the company when the act was passed, we do not doubt that the intention of congress was to grant to the company a present beneficial easement in the particular way over which the designated routes lay, capable, however, of enjoyment only when the way granted was actually located, and in good faith appropriated for the purposes contemplated by the charter of the company and the act of congress.   When such location and appropriation were made, the title, which was previously imperfect, acquired precision, and by relation took effect as of the date of the grant.   The settled doctrines of this court would seem to justify that conclusion."

In *Railroad Co. v. Baldwin*, 103 U. S. 426, the language of the act was substantially the same as in the

case now under consideration, and the route specified in the act was "from Elwood, in Kansas, westwardly, via Maryville, in the same state, so as to effect a junction with the Union Pacific Railroad, or any branch thereof, not further west than the one hundredth meridian of west longitude." In that case it was held, Mr. Justice Field delivering the opinion of the court, that the grant of the right of way was "a present absolute grant, sub-ject to no conditions except those necessarily implied, such as that the road shall be constructed and used for the purposes designed." It was further held "that all persons acquiring any portion of the public lands, after the passage of the act in question, took the same subject to the right of way conferred by it for the proposed road."

In each of the foregoing cases the designated route or line of the proposed road was before the court,— in the former by the articles of incorporation which are set out at length in the statement, and specially referred to in the opinion; in the latter the initial and intermediate points are distinctly specified, and the general direction outlined, in the act of congress granting the right of way. It will be observed that the act granting the right of way to the Denver & Rio Grande Company specifies neither terminal nor intermediate points, nor general direction, except as it may be inferred from the fact that the road already had its northern terminus at Denver, and its southern at Pueblo and Canon City, and that the grant was for "the extension and operation of its railway and telegraph lines in and through any contiguous territory of the United States to the northern boundary line of Mexico."

As we understand the opinion in the case of *Railway Co. v. Alling, supra,* the supreme court were careful to say that, as the act granting the right of way to the Rio Grande Company did not contain a detailed description of the routes of the main line and branches, congress

may be fairly presumed to have been informed in respect to said routes, and to have intended to restrict the grant to the particular way or routes designated in the charter of the company,— in that case, as before stated, the articles of incorporation showing that designated routes were before the court. In the case at bar the defendant introduced in evidence the act of congress granting the right of way to the Rio Grande Company, but did not offer in evidence the articles of incorporation, or any other evidence relating to the location of the routes of the main line or branches of the proposed road at the date of the passage of the act, so there was no *data* whatever of which the court could take notice, by which to determine whether plaintiffs' mining claim, so entered upon by the railroad company, was or was not within the limits of the right of way so granted.

Notwithstanding the very liberal and favorable constructions which have been given to various acts of congress granting rights of way over the public domain to railroad companies, we know of no opinion going so far as to hold that such grants should be construed to include routes not contemplated by the charters of the companies at the time of the grant, and we are unwilling to be the first to set such a precedent. The rule has been frequently expressed that "all grants of this description are strictly construed against the grantees, and nothing passes but what is conveyed in clear and explicit language." *Charles River Bridge v. Warren Bridge*, 11 Pet. 420; *Railroad Co. v. Litchfield*, 23 How. 88; *Gildart v. Gladstone*, 11 East, 675.

The assignment of errors as to the measure of damages having been voluntarily withdrawn by appellant, we see no occasion to disturb the verdict. The judgment is accordingly affirmed.

*Affirmed.*