# SHERLOCK v. LEIGHTON.

Mines and Minerals — Adverse Claim—Forfeiture—Evidence — Burden of Proof — Assessment Work — Location — Citizenship.

1. The party relying upon a forfeiture of a mining location must allege and prove it; and, in the first instance, the burden of proof rests upon him to establish the forfeiture.

2. When, however, the party alleging forfeiture shows that no work was performed within the limits of the claim, he makes out a *prima facie* case; and thereafter, should his adversary depend upon labor done outside the claim, the burden is upon him of proving such labor, and that its reasonable tendency is to the benefit of the claim.

3. Where work has, in fact, been done for the development of a mining claim, it may properly be considered as annual assessment work, although performed without the exterior boundaries of the claim; and in such case, it is immaterial whether the improvement is upon patented or unpatented property, except as this may tend to throw light upon the intention of the party in doing the work.

4. The law does not require that the annual expenditure to protect a mining claim shall be applied in the way of the best possible development of the claim; even though the work be done outside the boundaries of the claim.

5. The locator of a mining claim defending against an adverse claimant, in opposition to an allegation of forfeiture, relied upon labor done in a tunnel outside the claim, but proceeding toward the claim, and all his witnesses testified that the tunnel was dug in a favorable place for the discovery of ore on the claim, which was opposed by only the testimony of the adverse claimant. *Held*, that the great weight of the evidence was against the contention of the adverse claimant; and that the conflict was not of such a character as to require the appellate court to refuse to disturb the judgment for the adverse claimant upon that proposition, but that the conflict was so slight and unimportant that the usual rule as to disturbing judgments in case of conflicting evidence was not applicable.

6. In determining the question as to the beneficial character of a tunnel constructed off the claim, where the opinions of expert witnesses differ upon the question, some force should be given to the honest intention and good faith of the locator; and, in a doubtful case, that might be sufficient to turn the scale.

7. In an adverse suit, there being no allegation or proof that the defendant (the applicant for patent) is an alien, the mere failure of the defendant to prove his citizenship will not authorize the court, for that reason alone, to award the property to the adverse claimant, although by reason of such failure of proof as to citizenship, the defendant would not be entitled to a judgment in his favor.

8. It appearing from the testimony that a mining claim, which had been in the undisputed possession of the locators and their grantees for many years, was, when located, marked by posts set in the ground, at each corner, and that each post was marked so as to indicate the particular corner which it represented, and that the side posts were observed by a witness to be there shortly after the location. *Held*, that an objection that the claim was not so distinctly marked that its boundaries could be readily traced was not well taken.

[Decided January 10, 1901. Rehearing denied February 28, 1901.]

ERROR to the District Court, Fremont County, HON. CHARLES W. BRAMEL, Judge.

This action was brought in the District Court, by George H. Leighton against Peter Sherlock for the possession of a mining claim in support of an adverse claim, said Sherlock having applied for a patent. Judgment was rendered for the plaintiff, and the defendant prosecuted error. The material facts are stated in the opinion.

*M. C. Brown*, for plaintiff in error.

Work done outside of a claim or group of claims, if done for the purpose and as a means of prospecting or developing the claim, as in the case of tunnels, drifts, etc., is as available for holding the claim or claims, as if done within its boundaries. And this is so, even if the work be done upon another patented claim, if done for

the benefit of the one unpatented; but the work must have a direct relation to the claim, or be in reasonable proximity to it. (U. S. Rev. Stat., Sec. 2334; 2 Lindley on Mines, Sec. 631; 1 id., Sec. 63; Hall v. Kearney, 18 Colo., 505; McGaraghty v. Boynton, 12 Cal., 426.)

The allegation of forfeiture of the Cleveland lode rendered it unnecessary for the defendant to prove the location of that lode. (Belk v. Meagher, 104 U. S., 279.) The plaintiff did not prove anything as to whether work was done off the claim by the owners of the Cleveland, hence he failed to make out his case. The burden was upon him to make out his case of forfeiture. The defendant in error had no right to rebut the testimony of the plaintiff in error as to the work in the tunnel, outside the claim. The party entitled to begin his evidence must exhaust all the testimony in support of his side of the issue, before the opposite party is heard. The court may allow a departure from this rule, but a party cannot claim that he shall do so as a matter of right. (Jup. M. Co. v. Bodie M. Co., 11 Fed., 666; Ford v. Niles, 1 Hill, 300; Caldwell v. N. J. Steam Co., 47 N. Y., 282; Meyer v. Godell, 31 How., 45; Anthony v. Smith, 4 Bosw., 503; Shepard v. Potter, 4 Hill, 202; Hastings v. Palmer, 20 Wend., 225; Leland v. Bennett, 5 Hill, 286; Romertz v. East R. N. Bank, 49 N. Y., 577; R. R. Co. v. Simpson, 14 Pet., 448.) The testimony offered by defendant in error in rebuttal should have been offered in chief. When an old miner and prospector undertakes to do assessment work where in his opinion it will be beneficial, he is not to lose his claim because an expert says that work elsewhere would have tended more to the development of the claim. The finding of the court is insufficient, uncertain, and ambiguous. It is insufficient because it does not find that the plaintiff was entitled to possession as against the government as well as against the defendant. (Burke v. McDonald, 33 Pac., 49; McGinnis v. Egbert, 5 id., 652; Manning v. Strelow, 18 id., 625; Rosenthal v. Ives, 12 id., 904; Gwil-

line v. Donnellan, 115 U. S.) It was not necessary for the defendant in the suit to prove his citizenship, for the government relies upon the proofs in the land office upon that matter as to the applicant for patent. O'Reilly v. Campbell, 116 U. S., 420; Hamer v. Garfield M. & M. Co., 130 id., 292; McCarthy v. Speed, 77 N. W., 590; Manuel v. Wulff, 152 U. S.; Billings v. Aspen M. & M. Co., 51 Fed., 338.) But the court should have found that the plaintiff was a citizen in order to entitle him to the property and to a judgment, and for failure to do so, the judgment is void.

*Henry McAllister, Jr.*; for defendant in error; *Blackmer & McAllister*, of Counsel.

In this kind of case each party is practically a plaintiff, and must show his title; there cannot be a non-suit, but if neither party shows title, the verdict must be special, and the title remains in the government. (Iba v. Cent. Asso., 5 Wyo.,355; 2 Lindley on Mines, Sec. 763.) Ordinarily after the plaintiff has made a *prima facie* case, the adverse party introduces his testimony to contradict the case made by the plaintiff, and to establish his own case; then the plaintiff may introduce rebutting evidence in denial of the defendant's case. *Prima facie* evidence is that which is sufficient to establish a fact. (2 Elliott's Gen. Pr., Sec. 573; Dodge v. Dunham, 41 Ind., 186; Walker v. Walker, 14 Ga., 242; Kelly v. Jackson, 6 Pet., 622; U. S. v. Wiggins, 14 id., 334; Lilienthal's Tobacco v. U. S., 97 U. S., 268; 42 N. E., 600; 53 Fed., 196; 39 N. E., 358; 13 Pick., 69; 1 Jones Ev., Sec. 7; 2 Bouv. Dict., 739; 5 Ency. L., 42; 1 Thomp. Tr., Sec. 346.) The law does not assume impossibilities. It does not assume that the party alleging forfeiture can know what work has been done off the claim. Hence when he proves that no labor was performed within the boundaries of the claim, he satisfies the requirements of the law, and the burden of proof shifts to the other party if he claims that proper

work was, in fact, done off the claim.    (Hall v. Kearney, 18 Colo., 505.)   Facts peculiarly within the knowledge of a party must be proven by him when the burden of proof upon the opposite party has been discharged by *prima facie* evidence.   (1 Greenl. Ev., Sec. 79; 2 Thomp. Tr., Sec. 1832; 51 Ill. App., 317; 121 Ill., 84; Lawson on Presumptive Ev., p. 20.)

An allegation of forfeiture does not admit the validity of original location, and the authorities cited by counsel do not sustain the proposition.    The finding was sufficient, as the finding that the plaintiff is entitled to possession by virtue of a full compliance with the State and Federal Statutes includes everything necessary to be found to authorize recovery by the plaintiff.    The judgment was proper for the reason, if no other, that the defendant failed to prove his citizenship.   (McFeters v. Pierson, 15 Colo., 201; Keller v. Truman, 15 id., 143; Jackson v. Dines, 13 id., 90; Lee Doon v. Tesh (Cal.), 8 Pac., 621; Lindley on Mines, Secs. 233, 234,755; Barringer & Adams on Mines, pp. 386, 393, 396, 399, 407).


POTTER, CHIEF JUSTICE.


Plaintiff in error applied at the United States Land Office for a patent to the Cleveland Lode Mining Claim. Defendant in error filed a protest and adverse claim, and instituted this suit in support thereof to determine the ownership or right of possession, in pursuance of the provisions of Section 2326 of the Revised Statutes of the United States.

The claim of defendant in error is based upon a location of the Dewey lode, July 11, 1898, covering practically the same ground as that included within the exterior boundaries of the Cleveland lode.

Plaintiff in error and his grantors had been in possession of the Cleveland lode for several years, and had done considerable work in the direction of its development. By an amendment to the petition it was alleged that dur-

ing the years 1896 and 1897 the claimants of the Cleveland had neglected to perform one hundred dollars' worth of labor and improvements, or any amount, upon or for the benefit of that lode or claim; and that thereafter and before resumption of work thereon the defendant in error located the Dewey lode; and that in consequence of the non-performance of said work the right and title of plaintiff in error or his grantors was forfeited, if any such right or title had ever been acquired.

The case was tried to the court without a jury and resulted, in a judgment for defendant in error, who was the plaintiff below.

The trial court found that defendant in error had established his right and title to the Dewey Lode Mining Claim, and he was adjudged to be the owner and entitled to the possession of the premises in controversy. The case is brought here by proceedings in error.

In support of the averment of forfeiture the plaintiff below confined his evidence in chief to proof that in 1897 no work was performed or improvements made *within the boundaries* of the Cleveland claim. The defense introduced evidence showing the performance of the requisite amount of work, during that year, in a tunnel *outside the boundaries* of the claim, but near one of the end lines thereof, upon an adjoining patented claim known as the Carisa or Mono; and that the work in such tunnel was performed as assessment work upon the Cleveland, as well as another claim known as the Sampson, and for the purpose of developing both said claims. According to the testimony produced by the defense, the object of working the tunnel was the intersection of the vein upon the Cleveland, and thereafter a continuance of the tunnel by the owners of the Sampson until it should reach their claim, which was situated beyond and adjoining the Cleveland. The owner, or one of the owners, of the Sampson was also interested in the Cleveland. It was testified by the witnesses for the defendant (plaintiff in error here), upon this subject, that the tunnel was dug

in a favorable place to reach the ore on the Cleveland lode.

In rebuttal, the plaintiff was permitted, over objection, to introduce testimony to the effect that the tunnel did not tend to the benefit nor to improve or develop the Cleveland claim. The ruling of the court in that regard is assigned as error.

It is contended that the burden of proof to establish forfeiture rested upon the plaintiff below who had alleged the same; and that the evidence permitted to be introduced in rebuttal was improperly received, as it should have been offered in chief as a part of the plaintiff's case.

It is undoubtedly well settled that the party relying upon a forfeiture must allege and prove it; and the burden of proof in the first instance rests upon him to establish the forfeiture. When, however, such party shows that no work was performed within the limits of the claim, he makes out a *prima facie* case; and thereafter should his adversary depend upon labor done outside the claim, the burden is cast upon him of proving the performance of such labor, and that its reasonable tendency is to the benefit of the claim. Hall v. Kearney, 18 Colo., 505 (33 Pac., 373) ; Justice Mining Co. v. Barclay, 82 Fed., 554.

If the work has in fact been done for the development of the claim, it may properly be considered as annual assessment work, although it may have been performed without the exterior boundaries of the claim. And in such case, it is held to be immaterial whether the improvement is upon patented or unpatented property, except as this may throw light upon the intention of the parties in doing the work. Strasburger v. Beecher (Utah), 49 Pac., 740; Hall v. Kearney, *supra;* Justice M. Co. v. Barclay, *supra;* Mt. Diable Min. Co. v. Callison, 5 Sawy., 439; 9 Min. R., 616.

The reason of the rule which shifts the burden of proof in such cases is, we think, obvious. It is not a legal presumption that all labor done outside a claim, by the

owner, is performed as representation work. If so performed, and it was intended as the required annual labor, the fact must be peculiarly within the knowledge of the claimant; and one charging a forfeiture can hardly be expected to be informed as to all work which may have been performed off the claim, or as to the intention or purpose thereof.

The court did not err, therefore, in admitting the testimony introduced in rebuttal upon the question of the effect or tendency of the work done in the tunnel. And for the same reason, it was not error for the court to reject the testimony offered by the defendant below in surrebuttal to show that such work did tend to inure to the benefit and development of the claim. It was incumbent upon the defense to show that fact, as a part of its main case, after the plaintiff had made out a *prima facie* case by proof of the non-performance of work within the boundaries of the claim.

This brings us to the questions involved in the assignment of error that the judgment is not sustained by the evidence. In this connection it is argued on behalf of plaintiff in error that the evidence is insufficient to establish a forfeiture of the Cleveland claim.

There seems to be no question but that the owners of the Cleveland made a sufficient expenditure, in 1897, in the way of labor in the tunnel; and that such labor was performed as representation or assessment work for the Cleveland lode. The contention of the locator of the Dewey lode (defendant in error) is, that such labor did not tend to the benefit of the Cleveland. It is argued, with some basis therefor in the testimony, that a continuation of the tunnel in its original direction without a shifting thereof would intersect the Cleveland vein outside the boundaries of the claim. The direction of the tunnel originally was northerly and slightly to the east, but perhaps not enough to the east to strike the Cleveland ground upon reaching the vein. At least that may be assumed to be the case. Subsequently, however, the tun-

nel was caused to proceed more sharply toward the Cleveland end line; and we do not regard this shifting of the original direction as indicating an absence of purpose at the inception of the work in the tunnel to intersect the vein upon the Cleveland ground.   The testimony is positive that the work in the tunnel by the owners of the Cleveland was performed as assessment work for that claim, and with the purpose and intention of intersecting the vein.   The only question which requires consideration, in this connection, we think, is the effect of that work; whether or not its tendency was for the benefit or development of the claim.

Mr. Williams, who owned a one-third interest in the Cleveland and was foreman of the Carisa or Mono, upon whose ground the tunnel was located, testified that when the work upon the tunnel was commenced, it was believed to be close to the Cleveland line, and that it was run to develop that claim as well as the Sampson. That, according to his original calculation, the tunnel would be fifty-eight feet below the surface when it should strike the lead upon the Cleveland.   He testified that it was run in a proper place for the discovery of ore upon the Cleveland.

Mr. Sherlock's testimony was, in substance, that the object of the tunnel was to cross-cut the formation and to strike a lead on the Cleveland that would pay.   Mr. Luellan, a miner of eighteen years' experience, testified that the tunnel was run in a favorable place to discover ore on the Cleveland; and that as it was so close to the Carisa property it would be a benefit.

Another miner, who had been in that country since 1886, testified that the tunnel was run in a favorable place to reach the ore on the Cleveland.   Stating his reasons, he said that it would cut the lead of the Carisa which was producing valuable mineral; and it was presumed to be just where the lead could be cut through quicker than at any other place.   His opinion was that the tunnel would intersect the Cleveland at about the center of the vein.   Upon being questioned on cross-exami-

nation whether it would not have been advisable to start the tunnel on the Cleveland, he stated that he did not know as that would make any particular difference. He was asked if another method of working, mentioned by counsel interrogating him, would not have disclosed the vein; and he responded that he thought the tunnel much the best.

It appears that after the completion of the work done in 1897, the tunnel was approached by an open cut of more than twenty feet, and was about sixty feet in length underground.

In explaining his testimony Mr. Williams stated that "It was a favorable place to run a tunnel for the discovery of ore on the Cleveland; the distance was less, and we knew more of the existence of the ore here." Asked from where the distance was less, he said, "From where we started it would be less to where we would find the ore. We were near the Carisa, and did we not strike ore we were that much nearer to the ore bed."

In opposition to the testimony of the above-named witnesses, the defendant in error was, in rebuttal, produced as a witness on his own behalf, and also a Mr. Hinkley. The latter was asked whether or not the tunnel or the working therein tended to the benefit of or to improve or develop the Cleveland claim. He stated that he did not consider it of any benefit; that he did not consider it good mining to go 135 feet to strike the vein 30 or 35 feet away; that the vein was already exposed. He also testified that had the tunnel been extended on its original course it would have passed through the vein, as shown by the outcropping, outside the Cleveland ground; leaving the impression that it would, however, enter the Cleveland before intersecting the vein by pursuing the course given to it in 1897. Upon cross-examination, the witness denied saying that the work in the tunnel did not in any way develop the claim, and explained by stating that he did not consider it good judgment to run the tunnel in that way, admitting that others might differ from

him.   The effect of his testimony is exactly what he
finally stated it to be; viz., that in his opinion work might
have been done at some other place which would have
accomplished more for the development of the claim.

Mr. Leighton, the defendant in error, testified that, in
his judgment, the tunnel did not tend at all to the benefit
of the claim; and his reason, as stated, was that the
ground is so flat there that he did not see how the tunnel
could be of any benefit.   He stated further that had he
owned the claim, he would not have done the work there.

The finding of the court was general, and no special
reference was made in the findings to the question of for-
feiture.   The court found that the defendant in error had
established his right and title to the Dewey lode, and
adjudged that, as against the plaintiff in error, he was the
owner and entitled to the possession of the premises in
controversy.   The finding may have been based upon
a matter yet to be considered; but in view of the general
character of the finding, defendant in error is doubtless
entitled to rely upon the alleged forfeiture if the evidence
is sufficient to establish it.

The conflict in the evidence respecting the beneficial
tendency of the work performed in the tunnel is not of
such a character, in our judgment, as to authorize a court
of error to refuse to disturb the judgment for the sole rea-
son that it was based upon conflicting evidence.

The work in the tunnel, as shown by the undisputed
testimony, performed by the owners of the Cleveland, or
under their direction and at their expense, was done as
assessment work upon that claim, in good faith, for the
purpose of developing the same; and they believed at the
time that the work would tend to develop it.   All the
witnesses on behalf of the plaintiff in error who were
interrogated upon the subject, testified that the tunnel
was run in a place favorable for the discovery of ore in
the Cleveland claim.   In addition thereto, taking the
expressed intention and purpose of the parties running the
tunnel, and the location of the claim and tunnel and

direction pursued by the latter, as well as the location of
the vein as disclosed by the outcroppings, it appears
probable that if continued along its course, as laid out,
the tunnel will intersect the vein upon the Cleveland ter-
ritory.

Mr. Hinkley, it is true, testified that he thought more
advantageous work could have been performed elsewhere.
But the law does not require that the annual expenditure
to protect a claim shall be applied in the way of the best
possible development of the claim. As to that matter,
miners of equal experience and judgment might honestly
differ. The testimony of Mr. Hinkley presents no material
conflict. He was careful to deny having stated that the
tunnel did not tend at all to the benefit of the claim.

In the case of Mount Diable Min. Co. v. Callison, 9
Min. R., 616, it was said concerning the annual labor
required upon a mining claim to save it from forfeiture,
"Congress plainly required this work to be done by way
of a continuous, annual assertion, or renewal of the
original claim and location, nothing more," and it was
stated that the amount of expenditure required is too
small to be of any practical consequence as a development
of the claim.

With the single exception of the testimony of the
adverse claimant, who expressed as his opinion that the
tunnel in no way tended to the benefit of the claim, there
is no support in the evidence of the allegation of for-
feiture.

To hold upon the strength of his testimony alone, as
against all the other facts in the case and the judgment
of other experienced miners, that there had been an
abandonment or forfeiture, although the locator had, in
good faith, made the required expenditure, believing that
the work done would inure to the advantage of his claim
and assist in its development, would shock our sense of
justice. It would amount to substituting for the honest
judgment of the locator, the judgment, doubtless equally
as honest, of his adversary who has sought to get posses-

sion of the property by taking advantage of the supposed forfeiture.

It seems to us that in determining the question as to the beneficial character of a tunnel such as was constructed in this case, where the opinion of expert witnesses differ upon the question, some force should be given to the honest intention and good faith of the locator, and in a doubtful case that might be sufficient to turn the scale. But, according to most of the witnesses in the case at bar, the work was of benefit, and that opinion appears to us to be supported by the facts in the case. The great weight of the evidence upon the proposition is clearly opposed to the theory of the defendant in error.

We regard the conflict, so far as the facts are concerned, as so slight and unimportant that the case does not call for the application of the rule by which an appellate court is guided where a decision upon a question of fact is found to rest upon conflicting evidence. In our judgment the evidence is insufficient to sustain the allegation of forfeiture of the Cleveland lode.

But counsel for defendant in error urges that the judgment must be affirmed for the reason that plaintiff in error, the original locator, and applicant for patent, failed to prove citizenship on his part.

Proof of citizenship in an adverse suit is required only to enable a party to recover a judgment in his own favor. See Doon v. Tesh, 68 Cal., 43; Rosenthal v. Ives, 2 Idaho, 244; McFeters v. Pierson, 15 Colo., 201; Keeler v. Truman, 15 Colo., 143; Jackson v. Dines, 13 Colo., 90; 1 Lindley on Mines, Sections 233, 234. The absence of such proof may prevent a recovery by the one party, but it does not operate to authorize a judgment, for that reason alone, in favor of his adversary. 1 Lindley, Sec. 234; Billings v. Aspen M. & S. Co., 52 Fed., 250; Manuel v. Wulff, 152 U. S., 505; McCarthy v. Speed, 11 S. Dak., 362.

The result of the authorities upon this question is that an alien locator of a mining claim may, until " inquest of

office,'' hold and dispose of the same in like manner as a citizen. His citizenship is subject to question only by the government; but proceedings to obtain patents and adverse suits, brought in connection therewith, are held to have the effect or to be the equivalents of ''inquest of office,'' as the government is interested in the outcome of the proceedings or suit; and so by and through the right of the government, as it is said, either party to an adverse suit may question the citizenship of the other.

After reviewing the authorities, Mr. Lindley concludes, ''that a qualified locator may relocate a claim in the possession of an alien who has not declared his intention to become a citizen, if such relocation may be made without force or violence, and prior to the naturalization of the alien. That the relocator would then be in a position to contest the alien's right to a patent. But that the alienage of the original locator would not avail the subsequent citizen locator so as to permit the court to award the claim to him for that reason, but the latter would be enabled through the patent proceedings which are the equivalents of ' inquest of office,' to have alienage established, and thus clear the records.'' 1 Lindley on Mines, Sec. 234.

An objection on the ground of alienage, if sustained, would only defeat the claim of the alien. '' It would not, in any sense, sustain the title of the objector.'' Billings v. Aspen M. & S. Co., 52 Fed., 250.

The effect of a mere failure of proof of citizenship cannot be greater or more far reaching then an affirmative showing of alienage. The absence of evidence on the question of the citizenship of plaintiff in error, authorized the court to refuse to award a judgment in his favor, but it did not authorize a judgment in favor of defendant in error.

It is further contended by counsel that the evidence is not sufficient to justify the court in holding that the location of the Cleveland lode was so distinctly marked as that its boundaries could be readily traced.

We deem it unnecessary to rehearse all the testimony bearing upon the original location. In regard to marking the boundaries, Mr. Sherlock testified that he was present when the claim was located in 1885, and that the four corners were marked by posts set in the ground, and that each post was marked so as to indicate the particular corner which it represented. The post at the northeast corner being marked "N. E. corner of Cleveland lode," and the other corner posts having similar information marked upon them. He was not positive as to the placing of posts on the side lines. Mr. Williams testified that he became acquainted with the claim in 1885, and noticed that the "posts were up — the corner and side ones." We think the evidence sufficient; especially so when the length of time is considered during which the locators and their grantees had possession of the property. They had done considerable work upon the claim, and so far as the evidence discloses, had been in undisputed possession until the location of the Dewey lode by defendant in error.

Moreover the defendant in error did not seek by testimony to dispute the sufficiency of the original location. It is questioned in this court apparently for the first time, solely upon the evidence produced by the plaintiff in error.

Our conclusion is, that upon the evidence the defendant in error was not entitled to a judgment in his favor, and as such a judgment was rendered, it will be reversed, and the cause remanded for a new trial.    *Reversed.*

CORN J., and KNIGHT J., concur.

### ON PETITION FOR REHEARING.

POTTER, CHIEF JUSTICE.

Counsel for defendant in error has filed a petition for rehearing, and asks a reconsideration of the effect of the failure of plaintiff in error, defendant below, who was an

applicant for patent to a mining claim, to prove that he was a citizen.

We held that while such want of proof would warrant a judgment against him, it did not authorize a judgment in favor of the adverse claimant. In arriving at that conclusion several authorities were cited to the effect, first, that proof of citizenship, in an adverse suit, is required only to enable a party to recover a judgment in his own favor; and, second, that the absence of such proof may prevent a recovery by the one party, but does not operate to authorize a judgment, for that reason alone, in favor of his adversary. We quoted from Lindley on Mines that author's statement of the result of the decisions upon the question, and among other matters so quoted was this: "The alienage of the original locator would not avail the subsequent locator so as to permit the court to award the claim to him, for that reason, but the latter would be enabled through the patent proceedings, which are the equivalents of 'inquest of office' to have alienage established, and thus clear the records."

Referring to the remarks of Mr. Lindley, counsel for defendant in error construes the same to mean that the party opposing on alien locator must do something more than prove the alienage; and that the "something more" would be done, if he proved his own qualifications and every act of his own location in compliance with law. In view of the authorities discussed, in this connection, by Mr. Lindley, we think that counsel's contention as to the author's statement may be open to serious question. In Manuel v. Wulff, 152 U. S., 505, it was held that, although the objection of alienage was properly interposed in the adverse suit, the naturalization of the alien applicant for patent before judgment cured the infirmity. Hence, while, as Mr. Lindley asserts, a citizen may peaceably relocate a claim over that of a prior alien locator, and thus qualify himself as an adverse claimant ; his relocation would be of no avail, should the alien afterward and prior to judgment in an adverse suit become a citizen by naturalization,

In Laws of Mines and Mining by Barringer & Adams, it is said at page 203, referring evidently to the case of Billings v. Smelting Co., 52 Fed., 250, that if the principle laid down in that case prevails, the result will be that ground located by an alien cannot be relocated until he has been deprived of his title by some act of the government, which ordinarily will not occur until there has been an application for a patent, and it becomes necessary for him to establish his right either as applicant or adverse claimant.

We are inclined, still, to the view that the observations of Mr. Lindley, quoted in our former opinion as to relocation by a citizen of ground claimed by an alien, were intended to show that a citizen could by such relocation obtain a standing as adverse claimant in order to have alienage established, rather than that thereby he could secure a right to an affirmative judgment, awarding the property to him for that reason in the suit brought to adverse the right of the alien to a patent. It seems to us that the language used is not susceptible of any other reasonable construction. Moreover, is that not in line with the principle laid down in Manuel v. Wulff, *supra*? In that case the court applies to mining claims the settled rule that until alienage has been adjudged, an alien may take and hold land by purchase. And a purchase by an alien of a mining claim was held good where naturalization occurred anterior to judgment in the adverse suit, it being held that the act of naturalization took effect by relation.

It might be interesting to continue a discussion of this question, but it is unnecessary, as there was no allegation or proof of alienage in this case. It may be that, as counsel suggests, we are mistaken as to the effect of alienage of the applicant for patent in an adverse suit; and that he is correct in his contention that in such suit, when alienage of the applicant is shown, the adverse claimant upon establishing his act of location and his own qualification, would become entitled to a judgment awarding the property to him. While we have believed that the authorities lead to a contrary conclusion, and that Mr.

Lindley so avers, we are not prepared, beyond all question, to assert that counsel is not correct in the position maintained by him. Were that the question at issue here, we would give to it a more exhaustive consideration to ascertain to our complete satisfaction whether or not we had heretofore erroneously stated the result of the authorities upon that matter.

The adverse claimant, in the case at bar, did not allege alienage on the part of the applicant for patent, nor did he prove it or attempt to do so. So far as the citizenship of the applicant is concerned, upon the record in this case, it merely stands as unproven by him. The facts in the case, as we have held, show a prior location of the ground by the applicant (plaintiff in error) or his grantors, and that the same had not been forfeited by failure to perform the annual labor required by law. It was practically conceded on the trial that plaintiff held the disputed ground under a location earlier in point of time than that of defendant in error, but that fact was sought to be obviated by an allegation and attempted proof of forfeiture. Now, the original location, and the performance of annual labor upon the Cleveland lode having been held sufficient to comply with the law as to those matters, what right had defendant in error to make a location upon the ground at all? He was the plaintiff in the suit, as adverse claimant. Did he prove every essential act of location, as his counsel strenuously maintains? It is true he did prove that he went upon the premises, staked it off, called it the Dewey mine, and performed some work upon it. But, from the testimony, it appeared that the claim was already covered by the existing location of another party. By what right, therefore, did the adverse claimant make his alleged location? Was it because the prior locator or the one claiming thereunder was an alien? If so, the fact of such alienage has not been established.

Counsel concedes that in an adverse suit both parties are actors, and that each must establish his claim against not only his adversary, but the government as well; and

that neither party can rely upon the weakness of his adversary's case. It is well settled that when neither party has proven title, they are both left without right to a patent; and it follows that if no evidence of title should be given by either party, the case would have to be dismissed. In this suit the defendant in error was plaintiff. He did not show that Sherlock was an alien. When the latter came to put in his evidence, he omitted, probably through inadvertence, to show his citizenship. But that falls short of proof that he is an alien. Notwithstanding the absence of proof upon the question, Sherlock may, in fact, be a citizen. Hence, we say that defendant in error did not show his right to locate the Dewey lode upon Cleveland ground. The record nowhere discloses that an objection on the ground of the failure of plaintiff in error to prove citizenship was taken at the trial.

It was held in O'Reilly v. Campbell, 116 U. S., 418, that in an action of this kind such an objection cannot be taken in the appellate court for the first time, and the court said, "The objection to the want of proof of that fact (citizenship), if taken below, might have been met at once, if indeed the plaintiffs are citizens. The rule is general that an objection which might have been thus met must be taken at the trial or it will be considered as waived, except as to matters going to the jurisdiction of the court." We had intended to refer to this case in the previous opinion. For the reasons aforesaid, a rehearing will be denied.

CORN J., and KNIGHT J., concur.