Argued November 2, decided December 12, 1911.

## MERCHANTS' NAT. BANK v. McKEOWN.

[119 Pac. 334.]

MINES AND MINERALS—ADVERSE CLAIM—FORFEITURE—PLEADING.

1. The general rule that forfeiture as a defense must be specially pleaded does not necessarily obtain in a proceeding to determine adverse claims to a mining location under Rev. St. U. S. § 2326 (U. S. Comp. St. 1901, p. 1430), where the title of each party is in issue, and neither can recover without proof of title.

APPEAL AND ERROR—OBJECTIONS NOT MADE AT TRIAL—ANSWER.

2. In a suit to determine adverse claims to a mining location, plaintiff could not object for the first time on appeal, in the absence of evidence

that any work was done subsequent to the date specified and prior to defendants' location, that the answer did not charge a forfeiture for failure to do assessment work for a certain year.

MINES AND MINERALS—ASSESSMENT WORK—BURDEN OF PROOF.
3. Where, in a suit to settle adverse claims, defendants established that no work had been done on the claim in controversy in the year 1907 prior to defendants' location which was admitted by plaintiff, the burden was shifted to plaintiff to establish that work done outside the claim was for the benefit of such location.

MINES AND MINERALS—ASSESSMENT WORK—EMPLOYMENT OF WATCHMAN.
4. Whether the employment of a watchman and the payment of services as such constituted annual assessment work on a mining claim depends on the necessity of a watchman, and whether the expense was sufficient to satisfy the required amount.

MINE AND MINERALS—ASSESSMENT WORK—SERVICES OF WATCHMAN.
5. Where, on the termination of a work of a corporation on a mining location, they leave the superintendent in charge as watchman, the corporation was not entitled to charge the latter's salary as superintendent and the value of the services of his wife as cook and of his son as assessment work for the ensuing year, but could at most charge the value of his services as watchman.

From Grant: GEORGE E. DAVIS, Judge.

This is a suit by the Merchants' National Bank against David A. McKeown, Joseph McClernan and Thomas M. Ray to establish a right to a certain mining claim in Grant County, Oregon. There was a decree in the lower court for defendants and plaintiff appeals. AFFIRMED.

For appellant there was a brief over the names of *Mr. John L. Rand* and *Mr. William H. Packwood, Jr.,* with an oral argument by *Mr. Packwood.*

For respondents there was a brief over the names of *Messrs. Hicks & Marks,* with an oral argument by *Mr. J. E. Marks.*

Opinion by MR. CHIEF JUSTICE EAKIN.

This is a suit instituted to establish an adverse right to a mining claim, for which defendants have applied to the United States' Land Department for a patent. The Golden Star claim is one of a group of mines originally owned by the Copperopolis Copper Company, in Grant

County, Oregon, to whose title plaintiff has succeeded. On January 2, 1908, defendants relocated it as the Argonaut quartz mining claim.

It is conceded that the Copperopolis Copper Company did no annual labor, as required by section 2326, U. S. Rev. St. (U. S. Comp. St. 1901, p. 1430), upon the Golden Star claim for the year 1907. But plaintiff asserts that until June, 1906, it was performing labor in excavating a tunnel, and was erecting machinery upon the Protection & Oregon Bell claims, being patented claims in a group with the Gloden Star, known as the "Home Group," for its development, and had constructed more than 600 feet of tunnel and had several thousand dollars' worth of machinery and buildings thereon; that for lack of funds it had ceased work thereon in June, 1906, and its superintendent, W. W. Gibbs, his wife, and son, had remained upon the property as keepers of the property until June, 1907. Gibbs' salary as superintendent was $150 per month. The son's salary as chore boy and the wife's as cook was $40 each per month. Plaintiff relied on these expenditures to constitute the annual labor for the 10 unpatented claims in that group. Defendants allege in the answer the forfeiture by plaintiff's grantors of the Golden Star claim as follows:

"That on the 2d day of January, 1908, the plaintiff or its grantors or predecessors in interest had performed no work or improvements upon said Golden Star quartz claim as the annual labor and assessment work for the year 1907, and all rights or interest under or by virtue of said pretended location and amended location were forfeited and the said premises so attempted to be located were forfeited on account of the failure to do said annual work, and the same was on the 2d day of January, 1908, unappropriated public domain of the United States, and subject to be located as such."

1. Plaintiff now for the first time insists that the answer does not sufficiently allege a forfeiture, in that

it does not state that work on the claim had not been resumed in 1908. Generally forfeiture as a defense must be specially pleaded, but it is stated in 2 Lindley, Mines, § 643, that this rule does not necessarily obtain in a proceeding to determine adverse claims under U. S. Rev. St., § 2326, where the title of each party is in issue, and neither can recover without proof of title. See, to the same effect, *Willson* v. *Cleaveland,* 30 Cal. 192; *Trevaskis* v. *Peard,* 111 Cal. 599 (44 Pac. 246) ; *Steel* v. *Gold Lead M. Co.,* 18 Nev. 80, 86 (1 Pac. 448).

2. Furthermore, there is not a total absence of allegation thereof; it being alleged that on January 2, 1908, plaintiff had performed no work or improvements as annual labor or assessment work for the year 1907, and the same was on January 2, 1908, unappropriated public domain, subject to location, and that defendants located it on that day. This may be a defective statement of the fact that work was not resumed, but not an omission. There was no contention at the trial that work was resumed in 1908, prior to defendants' location and it is too late to raise that question in this court for the first time. A pleading unobjected to until after trial will be liberally construed. *Patterson* v. *Patterson,* 40 Or. 560 (67 Pac. 664).

The only other contention of plaintiff is that the evidence established the fact that plaintiff's grantors performed the annual labor for the year 1907 as required by the United States statute. It is not contended by plaintiff that any labor was performed on the Golden Star claim during that year, but that, it being a part of the "Home Group," work done and improvements made on the Protection and Oregon Bell claims prior to 1907, which was for the development of all claims, inured to the benefit of the Golden Star, and that the work of the watchman above mentioned in 1907 should be taken as the annual labor for those claims.

3. When defendants established that no work had been done upon the Golden Star claim for the year 1907, which was admitted by plaintiff, the burden shifted, and was upon plaintiff to establish the fact that work done outside of the claim was· for its benefit.  2 Lindley, § 630; *Dyer* v. *Brogan,* 70 Cal. 136 (11 Pac. 589) ; *Hall* v. *Kearney,* 18 Colo. 505 (33 Pac. 373) ; *Sherlock* v. *Leighton,* 9 Wyo. 297 (63 Pac. 580, 934). It appears from the evidence that in June, 1906, the Copperopolis Copper Company ceased operation upon the group and the men were discharged except Gibbs, a stockholder and officer of the company and superintendent of the operation, who remained upon the properties in the employ of the company, until June, 1907, as watchman or keeper.  The improvements upon the Protection and Oregon Bell claims consisted of two engines and boilers, concentrating tables, two gigs, a gasoline engine, a dynamo, an ore crusher, an air compressor which was used in operating a drill in the tunnel, a ventilating system, operated in the tunnel by the gasoline engine.  A part of this plant was obtained only to experiment on the ore from the Oregon Bell claim, and was not used more than a month or two. The only work done at any time which tended to develop the Golden Star claim was the tunnel which had reached within a few hundred feet of the claim; and the only machinery or improvements that related to it was such as were used in extending the tunnel.  When the mine was shut down in June, 1906, the company had evidently no immediate prospect of resuming work.  It ceased work for the reason that it had no money and was making an effort to sell the mine.  Thereafter, in June, 1907, the property was attached for debt and placed in the hands of a receiver, and through such proceeding the property was transferred to this plaintiff.

4. It is not contended that there was any work done on any of the group that could constitute development

work for the year 1907, other than the expense of the watchman from January 1 to June 1, 1907, and the sufficiency of that expense to constitute the annual work for the Golden Star claim depends upon the necessity for the watchman, and whether the expense was sufficient for that purpose.

5. During that period Gibbs was upon the property as keeper, but the services of the son in cutting wood for the house and caring for the team of horses and those of the wife as cook were not necessary; nor was the company justified in paying a superintendent's salary for a watchman. There is no evidence as to the value of the services of a watchman, but it does appear that McClernan during the same time was performing annual assessment work upon the Kimbell group, belonging to the same company, at $3 a day, and paid his own board, and the expense of the watchman should be no more. Therefore if the expense of the watchman from January 1 to June 1, 1907, was necessary and was for the advantage of the Golden Star claim equally with the others, it would be insufficient to equal the annual labor required upon the 10 claims, and but a small part of the property to be cared for related to the group other than the two patented claims. The expense of the keeper is only allowable as annual labor when the mine is temporarily idle and the work is to be resumed again, the watchman being necessary to preserve the property needed when the work is resumed, and cannot be so applied from year to year indefinitely as a substitute for the annual labor. This is the holding in *Hough* v. *Hunt,* 138 Cal. 142 (70 Pac. 1059: 94 Am. St. Rep. 17), where it is said:

"The cases must be rare in which it can justly be said that such money is expended in prospecting or working the mine. There may be cases where work has been temporarily suspended, and there are structures which are likely to be lost if not cared for, and it appears that the structures will be required when work is resumed,

and that the parties do intend to resume work in which money expended to preserve the structures will be on the same basis as money expended to create them anew. But this could not go on indefinitely. As soon as it should appear that this was done merely to comply with the law and to hold the property without any intent to make use of such structures within a reasonable period, such expenditures could not be said to have been made in work upon the mine."

This case is cited with approval in *Gear* v. *Ford*, 4 Cal. App. 562 (88 Pac. 600) ; 2 Lindley, § 629; *Fredricks* v. *Klauser*, 52 Or. 110 (96 Pac. 679). See also, *Kinsley* v. *New Vulture Min. Co.*, 11 Ariz. 66 (90 Pac. 438 : 110 Pac. 1135) ; Morrison, Mining Rights (14 ed.) 118. The application of the expense of the keeper to the annual work in the case before us is excluded by the terms of the language quoted. Evidently the company was insolvent and had no intention of immediately resuming work, and the keeper was there to preserve the property, to aid in its sale, and not in the development of the mine. Even if it is conceded that the whole of the expense of the keeper should be credited as annual labor upon the ten unpatented claims, it is insufficient in value for that purpose.

The decree of the lower court is affirmed.

AFFIRMED.