## NEVADA SIERRA OIL CO. v. MILLER et al.

(Circuit Court, S. D. California. November 6, 1899.)

### No. 858.

1. JURISDICTION OF FEDERAL COURTS—ADVERSE CLAIMS TO PUBLIC MINERAL LANDS—FEDERAL QUESTION.

Where the allegations of a bill show that the respective parties to the suit are making adverse claims to the same land under the mineral land laws of the United States, and that the proper determination of such conflicting claims necessarily requires the application and construction of those laws, a federal court has jurisdiction of the suit for such purpose, the property in controversy being alleged to be of the requisite statutory value; and having jurisdiction for that purpose, and such suit being equitable in its nature, the court will entertain and determine all incidental questions between the parties growing out of their conflicting claims, and will grant an injunction or appoint a receiver, where such course is proper.

2. SAME.

A bill asserting rights based on the location of a mining claim under the laws of the United States, which shows that the validity of such location depends on the question whether or not the locators discovered a mineral deposit within the limits of the claim prior to its location, within the meaning of such laws, and which sets out in full the facts relating to such alleged discovery, discloses a question arising under the laws of the United States, which gives a federal court jurisdiction where the requisite statutory amount is involved.

3. MINERAL LANDS—OIL PLACER CLAIMS—DISCOVERY OF MINERAL.

There can be no valid location of petroleum lands, under the mineral laws relating to placer claims, without a prior valid discovery of mineral within the limits of the claim.

This is a suit in equity to determine conflicting claims to public mineral lands under adverse locations. On demurrer to bill.

Joseph H. Call, W. J. Hunsaker, and Anderson & Anderson, for complainant.

C. C. Wright, Wm. H. H. Hart, L. L. Cory, J. A. Hannah, Stephen M. White, and Bicknell, Gibson & Trask, for defendants.

ROSS, Circuit Judge. Since the decision of this court on the demurrer to the original bill in this cause, reported in (C. C.) 96 Fed. 1, the complainant therein conveyed its interest in the property involved in the suit to the Nevada Sierra Oil Company, a corporation of the state of Nevada, by which an amended and supplemental bill has been filed, and to which the defendants thereto filed demurrers upon three grounds, the first of which is that the suit is not one arising under the laws of the United States, and hence that this court has no jurisdiction over it; secondly, for want of equity in the bill; and, thirdly, on the ground that the bill is multifarious, and that there is a misjoinder of parties defendant thereto.

The case being one in which the original jurisdiction of the court is invoked, such jurisdiction depends upon the facts as they existed at the commencement of the suit, and must be shown by the complainant's statement of its own cause of action. This has been so frequently decided that a citation of the cases is not necessary. If, however, it appears from the bill that the complainant asserts a right under and by virtue of some law of the United States, and that such right constitutes, in whole or in part, its alleged cause of action, and demands for its determination the construction or proper application of a law of the United States, it is equally clear that jurisdiction is shown, the property in controversy being alleged to be of the requisite statutory value.

The subject of the suit is a piece of land belonging to the government of the United States, which the complainant on the one side, and the defendants on the other, seek to acquire. The bill shows that the present complainant is the successor in interest of the Dewey Mining Company, a corporation organized under the laws of the territory of Arizona and the original complainant in the suit, having succeeded to all of that company's rights in the property involved in the suit by deed executed April 11, 1899; and that the Dewey Mining Company was the successor in interest, prior to the commencement of the suit, of certain named parties who first located the land in controversy, on the 1st day of January, 1893, as a consolidated placer mining claim, under and by virtue of the mining laws of the United States. The bill alleges that at the time of that location the land in question was free public land of the United States, subject to exploration, entry, and purchase under its mining laws, and had theretofore been surveyed and subdivided in accordance with law, and its boundaries and corners marked by proper monuments, and that it was then within a certain mining district which had been regularly organized and established in Fresno county, Cal., where the land is situated, under the name of "Coalinga Mining District," which district, from its organization, prior to May 2, 1890, to the passage of the act of the legislature of California approved March 9, 1897, continued to exist and be maintained as a mining district, and to be authorized and recognized by the laws of the United States. It is alleged that on January 1, 1893, certain named persons, each of lawful age and a citizen of the United States, associated themselves together for the purpose of locating, claiming, holding, and working in common the N. E. $\frac{1}{4}$ of section 20, town-

ship 19 S., range 15 W., M. D. M., in Fresno county, Cal., as a placer mining claim, and did on that day, as an association of persons, distinctly mark the said claim on the ground with monuments of stone placed one at each of the four corners of the location, with monuments between the corners at points of prominence, and in such manner that the boundaries of the claim were distinctly marked on the ground, and could be readily traced, both with reference to the monuments so erected by the locators as well as by the permanent monuments established by the government in its survey of the land, and that on the same day the locators posted upon the claim a notice of its location, signed by them, and which contained the date of location, a description of the claim by reference to the monuments and by reference to its legal government subdivision, and designated it as the "Arnold Placer Mining Claim," which notice was on the same day duly recorded in the records of the mining district. It is alleged that, prior to the making of the location mentioned, the said locators discovered valuable deposits of petroleum and mineral oils upon the claim, which discovery consisted of the finding of seepages of oil, and of the residuum of oil, upon the claim, and upon land adjoining the said described tract, upon different sides, and discovering upon the said claim shale and oil-bearing sand rock of a character similar to that in which petroleum in large and paying quantities had been found and developed in the vicinity, and also from the discovery of shale and veins of sand rock similar in character to that upon land known to be valuable for petroleum, which veins and strata extended upon and across the said mining claim; that those discoveries of the said locators clearly indicated the existence of petroleum in the land in controversy in paying quantities, and such as would and did justify the said locators, and the complainant, as their successor in interest, in working the said claim, and in making expenditures thereon, and in protecting their rights thereto, in the expectation that oil in valuable quantities would be found in the said land. The bill alleges that, prior to the making of the location of January 1, 1893, the locators thereof discovered mineral deposits in the land so located; and alleges that the facts above stated, under a proper and true construction of the provisions of sections 2320 and 2329 of the Revised Statutes of the United States, constituted a discovery of mineral deposits within the said land, and that those sections, properly construed, do not mean that prior to location a locator of mining ground thereunder shall actually see or have personal knowledge of the existence of mineral deposits in paying quantities in or upon the claim, but that all that they require is that the locator shall discover sufficient evidences of the mineral character of such land as to justify further expense and exploration; which contentions on the part of the complainant, the bill alleges, are disputed by the defendants, who contend, according to its averments, that the laws of congress contemplate and require, before a valid location of a placer mining claim can be made, that the locator shall actually discover mineral upon the claim in paying quantities, and upon that theory contend that the predecessors of the complainant never made

a discovery of mineral upon the land in question. The bill further alleges that on December 29, 1894, in accordance with the requirements of the act of congress of July 18, 1894, providing for the suspension of the assessment work upon mining claims for that year, the locators of the said claim of January 1, 1893, filed and caused to be recorded in the mining records of the Coalinga mining district a notice stating that the said locators claimed the said N. E. ¼ of said section 20 as a mining claim, and that they intended in good faith to hold and work the same; that since the year 1894 said locators of the said claim and their successors in interest have continued to claim the same as a placer mining claim, but did not perform sufficient labor thereon to constitute the annual labor required upon placer mining claims, under the mining laws of the United States, for the year 1895; that the said locators of said Arnold mining claim, in the year 1898 and prior to the commencement of this suit, conveyed their interest therein to the aforesaid Dewey Mining Company. The bill further alleges that on January 1, 1896, the said mentioned quarter section of land was free public land of the United States, subject to exploration, location, purchase, and claim under the mining laws of the United States, and that on that day certain named persons, each of lawful age and a citizen of the United States, discovered valuable deposits of petroleum upon the said land, which discovery, it is alleged, consisted of the facts hereinbefore stated, and that after such discovery (the sufficiency of which it is alleged the defendants controvert), and on the said 1st day of January, 1896, the said named persons, being eight in number, associated themselves together for the purpose of locating, claiming, holding, and working in common the said quarter section of land as a placer mining claim, and did on that day, as such association of persons, distinctly mark the said claim on the ground with monuments of stone, placed one at each of the four corners of the location, with stakes or monuments between the corners at points of prominence, and in such manner that the boundaries of the claim were distinctly marked on the ground, and could be readily traced, both with reference to the monuments erected by the locators, as well as by reference to the permanent monuments established by the government in its survey of the land; and that on the same day the said locators posted upon the claim a notice of its location, signed by them, and which contained the date of location, a description of the claim by reference to the monuments and by reference to the legal government subdivision of the land, and designated the claim the "Mars Placer Mining Claim"; which notice was on the same day, to wit, January 1, 1896, duly recorded in the mining records of the Coalinga mining district, and on March 4, 1896, in the office of the recorder of the county in which the land is situated. It is alleged that on January 1, 1896, the said locators entered into the peaceable and exclusive possession and enjoyment of the land so located, and that they and their grantees have ever since remained in its exclusive possession, enjoyment, and use, down to the time of the filing of the original bill herein. The bill further alleges that after the said location of January 1, 1896, by the association of persons mentioned,

the secretary of the interior of the United States made a ruling by which it was adjudged that lands containing deposits of petroleum were not mineral in their character, within the meaning of the acts of congress relating to the location of mineral lands, and were not subject to location as such mineral lands. The bill further alleges that by an act of congress approved February 11, 1897 (29 Stat. 526), petroleum lands were declared to be subject to entry and location under the mineral laws of the United States relating to placer claims; and that it was further enacted thereby "that lands containing such petroleum or other mineral oil which have heretofore been filed upon, claimed, or improved as mineral, but not yet patented, may be held and patented under the provisions of this act, the same as if such filing, claim, or improvement was subsequent to the date of the passage hereof." The bill alleges that neither the present complainant nor its predecessors in interest performed any work or labor, or made any improvements, upon its said mining claim, during the year 1897, and that the complainant contends that the said act of congress of February 11, 1897, properly construed, intended to and did dispense with the doing of assessment work for the year 1897 upon the said claim; and that it was thereby intended by the said act, in view of the said decision of the secretary of the interior, made in August, 1896, adjudging that oil and petroleum lands were not subject to location as mining claims under the laws of the United States, and that its effect was, to validate and reinstate such mining locations made prior to the year 1897, with the same effect as if they had been made upon the date of the act of February 11, 1897. It is alleged that the defendants deny that the said act of congress of February 11, 1897, dispensed with the doing of assessment work for the year 1897 upon the said claim of the complainant, and contend that that act cannot be construed as having that effect, and cannot be construed as validating or reinstating the locations under which the complainant claims, or as having any bearing upon their validity. The bill alleges that, by reason of the said decision of the secretary of the interior and of the said act of congress of February 11, 1897, it appeared to said association of persons to be uncertain whether or not it was necessary to relocate the said mining ground after the passage of the act of February 11, 1897, in order to perfect their prior location; and that the said association of persons, without any intention of abandoning said mining claim or any rights thereunder, did, on the 26th day of May, 1898, cause and procure the same persons, each being of lawful age and a citizen of the United States, acting in behalf and at the instance of the association, to enter upon and relocate the N. ½ of said quarter section of land, having previously discovered thereon petroleum, which discovery, it is alleged, consisted of the facts hereinbefore stated, the sufficiency of which it is alleged is disputed by the defendants, and did, pursuant to their agreement, and on the said 26th day of May, 1898, locate said N. ½ of said quarter section of land as a placer mining claim, under the name of the "Manila Mining Claim," and did on that day mark out the boundaries thereof distinctly on the ground by erecting monu-

ments and stakes at short intervals on the side lines between the corner monuments at prominent points, and so that the boundaries of the claim could be readily traced on the ground, and posted thereon a notice of location, which set forth the names of the locators, the date of the discovery and posting of the notice, the name of the claim, and a description thereof by reference to its monuments, and also to its legal subdivision, and that on May 28, 1898, the said notice was duly recorded in the office of the county recorder of Fresno county. It is further alleged that, within 60 days after such discovery, the complainant and its predecessors in interest took possession of the said N. ½ of the said section, and caused labor to be performed thereon, and dug a tunnel to the depth of about 26 feet, for the purpose of developing and bringing to the surface the oil thereon, expending in the work a sum in excess of $50; and that thereafter the said Dewey Mining Company caused to be filed with the county recorder of Fresno county an affidavit showing such performance of the said work upon the said claim, and the value and kind thereof. The bill alleges that the said discoverers and locators of said Mars mining claim, located on January 1, 1896, and the said locators of the said Manila mining claim, located on May 26, 1898, did, before the commencement of this suit, convey all of their right, title, and interest in the said claims, and all their right, title, and interest in said S. E. ¼ of said section 20, to the said Dewey Mining Company, which lands were thereafter, and subsequent to the commencement of the suit, conveyed to the present complainant, and are now owned by it. The bill alleges that, notwithstanding the discovery, location, claim, occupancy, development, and work of the complainant and its predecessors in interest, and well knowing the facts in reference thereto, the defendants and their grantors, during the years 1895, 1896, 1897, and 1898, unlawfully caused notices to be posted upon said N. ½ of the said quarter section of land, and to be recorded in the mining records of Coalinga mining district, or in the county recorder's office of Fresno county, claiming the same as placer mining ground; and that each of the defendants claims that he has a right to so locate and hold the said land, or some part thereof, under the laws of the United States relating to mining locations, and not otherwise. It is alleged that said location notices so recorded by the defendants constitute clouds upon the title of the complainant to the said N. ½ of the said quarter section of land, and prevent and interfere with the full enjoyment and use thereof by the complainant. The present bill alleges that, since the filing of the original bill herein, the said Dewey Mining Company, predecessor in interest of the present complainant, through its officers and agents, caused $200 worth of work, labor, and improvements to be done and made upon the said mining claim, which work consisted of the laying of iron pipe for the bringing of water from springs on an adjoining section of land to the said mining claim; that the work of laying the pipe was and is necessary for the proper development of the claim, there being no water available for the working of machinery and engines thereon, and water being necessary for that purpose; that, within 30 days after doing the

work and making the improvements, the said Dewey Mining Company caused an affidavit to be filed with the county recorder of Fresno county showing the nature, value, and character of the work and improvements. It is further alleged in the present bill that since the filing of the original bill herein the defendants, by force and violence and threats of bodily injury, have prevented the present complainant and its predecessors in interest from doing further work or labor, or making further improvements, upon its said claim, threatening to kill the servants, agents, and employés of the complainant if they should attempt so to do; that since the filing of the original bill herein, to wit, on October 31, 1898, the defendants, unlawfully and without authority from the complainant, proceeded to construct numerous oil wells upon a portion of the premises comprising about 20 acres, and have taken therefrom and appropriated to their own use a large quantity of oil, the amount of which is unknown to the complainant, and that the defendants threaten to, and, unless enjoined, they will, construct other oil wells, and continue to take oil from the said land, until they have taken the whole thereof, and the said land shall have become worthless; that the defendants, by themselves and through third persons, have made, and are still making, repeated and numerous and successive claims and pretended locations upon the said tract of land under the laws of the United States, and not otherwise, by posting and recording repeated and successive notices of location, sometimes upon one part of the land and sometimes upon another, sometimes making such locations in the name of one person and sometimes in the name of another, and that the defendants, after procuring such locations to be made, procured conveyances thereof to themselves; and that it will be necessary for the court to determine the validity of and construe such numerous locations. It is alleged that all of the locations so made by the defendants were made at a time when the land was reserved from location by the defendants, and that the location of the complainant has not expired. It is alleged that the oil taken from the land by the defendants during the years 1898 and 1899, down to the time of the filing of the present bill, has fluctuated and varied greatly in value, and that the cost of extracting the same has varied, and that the amount taken out by the defendants has during that period varied in quantity, so that an accounting is necessary in order to determine the value of the oil so extracted by the defendants. The bill further alleges that after the commencement of this suit, and on April 1, 1899, the defendant E. O. Miller commenced an action against the Dewey Mining Company, the predecessor in interest of the present complainant, and against certain fictitious defendants, in the superior court of Fresno county, Cal., to quiet title to the E. $\frac{1}{2}$ of said section 20, including the land involved in this suit, and caused process to be served on complainant, and upon the said Dewey Mining Company, on the 21st day of April, 1899, and in the said action the said Miller sought to recover the same land sued for herein, and in his said bill of complaint presented the same issues that are involved in the present suit; that the said action

was brought by the said Miller to hinder, embarrass, and delay this court in proceeding in this cause, and to prevent the complainant from obtaining relief herein; that the defendants threaten to, and, unless enjoined, they will, institute other adverse actions against the complainant and its predecessors in interest, to recover the land involved herein, and to secure an adjudication of the issues presented by this bill. The present bill further alleges that under and by virtue of the laws of the United States relating to placer mining claims, and by virtue of the said discovery of mineral upon the land in controversy by the predecessors in interest of the complainant, and the said locations of the said land by the predecessors in interest of the complainant, and of the making and recording of the notices of location as alleged, and the doing of work and labor and the making of the improvements upon the said claim as alleged, and by virtue of the alleged conveyances to the complainant, it is entitled to hold and work the said mining claim, and to secure a patent therefor from the United States, upon taking the steps required by the laws of the United States; all of which, it is alleged, is disputed by the defendants, who contend that, by a proper construction of the laws of the United States, the complainant has not acquired any right to hold or work the said mining claim or to secure any patent therefor. The prayer is for an accounting between the complainant and the defendants for the value of the oil extracted by the defendants, and that the defendants be required to pay the complainant the value thereof; that, pending a final decree herein, a receiver be appointed by the court to take the possession, care, working, and management of the said mining claim, and that the defendants, and all other persons, be enjoined from in any way interfering with its possession, care, management, and working, or the making of improvements thereon; that the defendants be enjoined from prosecuting, or taking any steps in the prosecution of, the suit brought by the defendant Miller in the superior court of Fresno county, or in any other suit in that or any other court than this court, to recover or quiet the title to the land in controversy herein, or from presenting in any other court any of the issues presented by the present bill; that the cloud now on the title of the complainant to the said N. ½ of the S. E. ¼ of said section 20 be removed, and the complainant quieted in its possession and title thereto; and for such other and further relief as may seem equitable, and for costs.

According to the averments of this bill, there lies, at the very foundation of the case, the question as to whether there was a discovery of any mineral deposit, within the limits of the claim in controversy, prior to its location by the predecessors in interest of the complainant. Rev. St. §§ 2320, 2329. Without a valid discovery of mineral within the limits of the claim, there could be no valid location of the ground as a placer mining claim. That is clear, and no one, I apprehend, will dispute it. That question, therefore, not only enters into the essence of the complainant's alleged cause of action, but constitutes its foundation stone. The facts constituting the alleged discovery are stated at large in the present bill. The statute authorizing the location of a placer mining claim upon the public

land, after discovery of a mineral deposit within its limits, does not declare what shall constitute a discovery. Whether or not the finding of seepages of oil, and its residuum, upon a given piece of public land and upon the lands adjoining it on different sides, and the finding thereon of shale and oil-bearing sand rock of a character similar to that in which petroleum in large and paying quantities had been found and developed in the vicinity, which veins and strata extend to and across the ground in question, manifestly depends upon the application and true construction of the laws of the United States. Nothing can be plainer, I think, than this. It is a question, too, that not only concerns the contesting claimants of the land, but in which the government is also interested. If it be true that the facts alleged in the present bill constitute a valid discovery of a mineral deposit, within the true meaning and intent of the sections of the Revised Statutes cited, then, clearly, it shows a valid location of the ground in controversy by the predecessors in interest of the complainant on the 1st day of January, 1893; and although it also shows that that location was not kept good, by reason of the failure of the locators to perform the annual work required by the laws of the United States, it further shows that the ground continued free public land of the United States, open to exploration, location, and purchase, under the mining laws, to the 1st day of January, 1896, when it was again located by predecessors in interest of the complainant as a consolidated placer mining claim under the laws of the United States and in conformity therewith, and with the local rules and regulations of the mining district in which it is situated, and that from that time forward they and their grantee have held the peaceable and exclusive possession and enjoyment and use of the premises, to the time of the filing of the original bill in this suit. The bill alleges, however, that neither the present complainant, nor either of its predecessors in interest, performed any work or labor, or made any improvements, upon the claim in question, during the year 1897, because of an adjudication made by the secretary of the interior in August, 1896, to the effect that lands containing deposits of petroleum are not mineral in their character, within the meaning of the acts of congress relating to the location of mineral lands, and were not subject to location as such; but this failure and otherwise forfeiture of the claim in controversy by the predecessors in interest of the present complainant, the bill alleges, was cured and avoided by the act of congress of February 11, 1897. Whether or not this is so clearly involves the application and construction of that law. If its true construction be as alleged and contended on the part of the complainant, then obviously, according to the averments of the bill, the location made by the complainant's predecessors in interest on the 1st day of January, 1896, continued valid, notwithstanding their failure to perform any work or labor or to make any improvements upon the claim during the year 1897. The bill shows that, notwithstanding these alleged rights on the part of the complainant, the defendants have committed various acts in the assertion of their claim to the ground in controversy under and by virtue of the laws of the United States; among others, the making

97 F.—44

and recording of various mining locations under those laws upon the land in controversy, which, if invalid and the complainant's claims be valid, constitute a cloud on the latter. In Railroad Co. v. Zeigler, 167 U. S. 65, 17 Sup. Ct. 728, the plaintiff alleged in his complaint that on May 1, 1889, he was in possession, as a pre-emptor under the laws of the United States, of a tract of land containing about 80 acres, and had lived thereon the requisite time and had made the improvements and had done all other acts necessary to entitle him to a patent to the land from the United States; that the defendant company, being a corporation of the territory of Washington, on the day mentioned, entered upon and seized a strip of the land 50 feet in width, and appropriated it for railroad purposes, without the consent of the plaintiff, and without having compensated him therefor; and that the entry upon and seizure by the defendant of the land was under and pursuant to the laws of the territory of of Washington authorizing railroad companies to appropriate land for right of way for railroad tracks. The supreme court said:

"We have judicial knowledge that the authority of the territory to legislate in respect to the right of a territorial railroad corporation to enter upon the public lands of the United States was derived from the act of congress entitled 'An act granting railroads the right of way through the public lands of the United States,' approved March 3, 1875 (18 Stat. 482), whereby the right of way through the public lands of the United States was granted to any railroad company duly organized under the laws of any state or territory. The plaintiff's complaint, therefore, discloses the case of a contest between a settler claiming title under the laws of the United States and a railroad company claiming a right under an act of congress, and of such a case the circuit court for the district of Washington clearly had jurisdiction. Doolan v. Carr, 125 U. S. 618–620, 8 Sup. Ct. 1228; Cooke v. Avery, 147 U. S. 375, 13 Sup. Ct. 340."

I think it is impossible to distinguish the case just cited from the present case, which presents a contest between parties each claiming the right to a piece of government land under the laws of the United States, the application and true construction of which, if the averments of the present bill be true, must determine the rights of the respective parties. Moreover, the present bill alleges that since the filing of the original bill the defendants, by force and violence and threats of bodily injury, have prevented the complainant and its predecessors in interest from doing further work or labor, or making further improvements, upon the claim in controversy, threatening to kill the servants, agents, and employés of the complainant if they should attempt so to do. It further shows that the defendants have entered upon a portion of the disputed premises, and extracted large quantities of oil therefrom, and are continuing to do so, and, unless prevented by the process of the court, will extract all of the oil it contains, and leave the land valueless. The court takes judicial knowledge of the fact that the laws of the United States require a certain amount of work to be done, or a certain amount of improvements to be made, upon the claim annually, as a condition to the acquiring of the government title. If it be true that the acts of the contesting parties are of such a nature as to prevent either from doing the work or making the improvements exacted by the law as a condition to the acquiring of the government title, it may very well be that the court should appoint a re-

ceiver of the disputed property, to the end that the required work be done, or improvements made, on behalf of the party to the controversy who may ultimately be adjudged to be entitled to it. It is well settled that where application has actually been made to the land office for the title to a mining claim, and a contest there arises, the circuit court of the United States has original jurisdiction of it. Mining Co. v. Rutter, 31 C. C. A. 223, 87 Fed. 801, which case was approved, with emphasis, by the circuit court of appeals for this circuit, at its last term, in the case of McFadden v. Milling Co. (C. C. A.) 97 Fed. 670, and in such case it was further and again held that such actions are of an equitable nature. And as the right involved grows out of the laws of the United States, and out of those laws only, is not any party who properly alleges that he has acquired such a right, and is desirous of perfecting it, and of acquiring the land from the government, entitled to the protection of a federal court, if he shows that his rights are unlawfully interfered with? It seems clear to me that where, as here, it is shown that the respective parties to the suit are making adverse claims to the same land under the laws of the United States, and that the proper determination of those conflicting claims necessarily requires the application and construction of those laws, it is the duty of the court to entertain jurisdiction for that purpose, when properly invoked; and, having jurisdiction for the purpose of settling the conflicting claims, it will, under well-settled principles of equity, entertain and determine all incidental questions between the respective parties growing out of those conflicting claims, including the granting of an injunction and the appointment of a receiver, where such a course is shown to be proper.

The bill is not, in my opinion, multifarious, nor is there a misjoinder of parties defendant. The demurrer to the amended and supplemental bill is overruled, with leave to the defendants to answer it within 20 days.