## DEAN v. OMAHA-WYOMING OIL COMPANY.
## (No. 681.)

MINES AND MINERALS—MINING CLAIMS—OIL PLACER CLAIMS—
LOCATION—DISCOVERY—ADVERSE CLAIM—BURDEN OF PROOF—SUF-
FICIENCY OF EVIDENCE—LOCATION CERTIFICATES—AMENDED CER-
TIFICATE—RIGHT OF SUCCESSOR IN INTEREST TO FILE—ADVERSE
SUIT—EVIDENCE—PROOF OF CITIZENSHIP—APPEAL AND ERROR—
QUESTIONS NOT RAISED AT TRIAL.

1. An essential requirement of a valid location of a mining
   claim is that there shall be a discovery of mineral upon
   the ground.

2. In an adverse suit contesting the right to patent for an oil
   placer mining claim covering the northeast quarter of a
   certain section, where the defendant claimed discovery on
   said quarter section by a well alleged to have been sunk
   on the dividing line between said quarter section and the
   southeast quarter of the same section, *Held,* that the evi-
   dence of the county surveyor, who made a survey of the
   property after defendant's well had been sunk, tending to
   show that the stone marking the quarter corner on the
   west boundary of the section had been moved several feet
   south of its original location, and that said well by the
   government survey was several feet south of and off said
   northeast quarter of the section, was sufficient to support
   a finding in favor of plaintiff to the effect that defendant's
   discovery was not made within the boundaries of his claim.

3. A discovery for the purposes of location of a mining claim
   must be within the limits of the claim sought to be located.

4. While discovery of mineral is supposed to chronologically
   precede the acts locating a mining claim, such discovery
   may follow, instead of preceding, the acts of location, and
   will be good as against all who have not acquired inter-
   vening rights.

5. In an adverse suit contesting the right to patent to an oil
   placer mining claim, whether or not defendant had made a
   discovery of oil within the limits of the claim was a ques-
   tion of fact, and the burden of proving such discovery was
   upon the defendant.

6. The evidence in an adverse suit *held* insufficient to show
   discovery by defendant, where the trial court had found
   against him upon that issue, since it did not establish the
   fact that oil was found in the well sunk by defendant to

the depth of 52 feet, or, if oil was found, that it was sufficient in quantity to constitute a discovery, instead of being mere seepage; there being a substantial conflict in the evidence as to the character of the substance found in the well.

7. In an adverse suit, where it was claimed that defendant had not made a sufficient discovery, the question of the sufficiency of his discovery of mineral within the limits of the claim was for the trial court, and the evidence *held* sufficient to support a finding that discovery had not been made.

8. Where, in an adverse mining suit, the trial court found upon sufficient evidence that the defendant had not made a discovery within the limits of the claim, the defendant was not entitled to affirmative relief establishing in him the right of possession to the land in dispute.

9. Where the defendant in an adverse mining suit had made no discovery, *Held,* that he had acquired no intervening right which would prevent the plaintiff from filing an amended or additional certificate to the original location certificate of his claim.

10. The original location certificate of a mining claim and an amended certificate, if one be filed, must be construed together, and, if sufficient when so construed, the location record will be valid, although neither standing alone would be sufficient.

11. One who has succeeded to the interest of the original locators of a mining claim is permitted under Section 3459, Compiled Statutes, 1910, upon making discovery, to amend or file an additional certificate to show the date of discovery, and, having done so, will be entitled to the right of possession, where such amendment has not infringed upon rights of others existing at the time thereof.

12. Where an oil placer mining claim when originally located was properly staked and named, and otherwise properly located, except that there was no discovery, and afterwards upon making discovery, an additional certificate of location was filed stating the date of discovery, *Held,* that it was not necessary before filing the amended certificate to restake and again name the claim.

13. In an adverse mining suit, where the defendant, who was the applicant for patent, has not shown a discovery sufficient to entitle him to the right of possession, the fact that there was no proof of the citizenship of the original

locators of the plaintiff's claim did not entitle the defendant to affirmative relief.

14. A recorded certificate of a mining location is prima facie proof of the facts therein contained, in an adverse proceeding, as well as proof of compliance with the law in making the record, and the date thereof.

15. When the citizenship of the locator or locators of a mining claim is in issue in an adverse mining suit, it should be proven as any other fact in the case, and may be established by the affidavit of the party or a duly authorized agent.

16. The recital in the certificate of location of a mining claim to the effect that the original locators were each citizens of the United States and over the age of 21 years, together with other facts, may raise a presumption of such citizenship.

17. In an adverse mining suit the affidavit of plaintiff's agent to an additional certificate, which was filed after discovery to complete the record of plaintiff's claim, stated that the original locators of the claim were each citizens of the United States, and said affidavit was received in evidence without objection. *Held,* that said affidavit, in connection with the original and additional certificate, was prima facie proof of the citizenship of the original locators; the original and additional certificates together with said affidavit being the only evidence on the subject of said citizenship, and no objection having been made in the trial court that said locators were not citizens or that the fact of their citizenship was not shown.

18. In an action in support of an adverse mining claim the objection cannot be raised for the first time on appeal that the citizenship of the original locators under whom plaintiff claimed was not shown.

### ON PETITION FOR REHEARING.

19. A petition for rehearing not filed within thirty days after the decision was rendered, as required by a rule of the Supreme Court, is not properly before the court for consideration; such rule having the force of a statutory enactment.

[Decided January 7, 1913.]          (128 Pac. 881.)
[Rehearing denied February 17, 1913.]     (129 Pac. 1023.)

ERROR to the District Court, Uinta County; HON. CHARLES E. CARPENTER, Judge.

This was an action brought in support of an adverse mining claim by the Omaha-Wyoming Oil Company, a corporation, against Charles W. Dean. From a judgment in favor of the plaintiff the defendant brought error. The material facts are stated in the opinion.

*P. W. Spaulding* and *S. T. Corn,* for plaintiff in error.

The only evidence in favor of the location under which the plaintiff below claimed was a location notice filed with the County Clerk May 18, 1901, to the effect that the ground had been located April 1, 1901. There is no proof of discovery of oil, the posting of notice, or the marking of the boundaries at any time, or of the citizenship of the locators. Nor does the location notice give the name of the claim "designating it as a placer claim" as required by statute. (Comp. Stat. 1910, Sec. 3474.) There was proof of certain so-called assessment work for the years 1902, 1903 and 1904 done on behalf of the plaintiff and its predecessors in interest, and for the year 1905 by plaintiff's lessee, but that proof is insufficient upon which to found a title or right to possession. The only possession of the plaintiff was for the purpose of doing the so-called assessment work. Defendant's title is based upon a location made October 23, 1903, and recorded January 4, 1904. He and his predecessors in interest were in possession of the ground during July, 1903, located and erected a rig thereon during August, 1903, began drilling October 8, 1903, and discovered oil on the claim on October 23, whereupon notice was posted and the claim located and staked as required by law. The discovery of oil was substantial and lasting. This well was drilled upon the boundary line between the defendant's two placer claims in a perpendicular direction downward, and was equally upon the claim embracing the land in controversy as well as the claim embracing the southeast quarter of the section, but a greater portion of the buildings and improvements were upon the land in controversy. A question having arisen in the mind of the defendant as to this division line well after plaintiff had begun operations upon the land, but

before they were carried to any effect, the defendant caused a 52-foot discovery well to be drilled at another place on the land in December, 1905, and thereby again discovered oil.

That assessment work upon a mining claim without actual discovery or actual possession with diligent prosecution of the work towards a discovery is insufficient upon which to found title or right of possession is well settled. (Whiting v. Straup, 95 Pac. 855; McLemore v. Express Oil Co., 112 Pac. 59.) The requirement that the boundaries of the claim be marked upon the ground is mandatory. (Comp. Stat. 1910, Sec. 3474; 2 Lindley on Mines, Secs. 371-373.) Recording of the location notice and proof of that fact is proof only of such recording, names of the locators and the name and extent of the claim. (2 Lindley on Mines, Sec. 392.) The notice is not evidence of a discovery. (Berquist v. Copper Co., 106 Pac. 680.)

The evidence shows that several discoveries of oil were made in the well drilled on the division line between the two claims, and upon making one of such discoveries the location of the claim was completed by compliance with the statutory requirements. There can be no question of the right of the locator to apply either discovery in the well to either claim. The discovery was of sufficient extent to embrace both claims, since a portion of the well was upon each claim. The situation is analogous to a tunnel location, where there may be a discovery of as many lodes or veins as are found or cut in the tunnel. In adverse mining suits nothing is presumed, but all facts necessary to show a valid location must be proven and found by the court, for the reason that the findings and judgment are made by statute the foundation of the right to patent in the land office. The plaintiff failed to prove the facts essential to its right of possession, and the finding of the court in its favor was erroneous.

(On petition for rehearing.) The trial court found that oil was discovered as claimed in the defendant's well, though it found that the year of such discovery was 1905

instead of 1903. But it did find that these discoveries were six months prior to the first discovery of the defendant in error. This court, in its opinion, holds that the finding of the trial court was sustained by evidence that defendant's discoveries were not on the claim. That was not, however, the finding of the lower court. On the contrary it was found that the well was on the dividing line. This court should have decided the question whether the discovery of oil in a well upon a dividing line between two claims, and partly in both claims, was sufficient upon which to base a location, and a rehearing is asked upon the ground that the court was evidently led into a mistake as to the grounds of the decision below. The questions considered and decided by the lower court were whether the defendant's location was initiated by a trespass and therefore invalid, and whether a discovery in a well upon the dividing line between the two claims was sufficient to validate the defendant's location of the claim in controversy.

*B. M. Ausherman,* for defendant in error.

The legal presumption in a case of this character is that the findings and decree of the lower court are correct, and they should not be disturbed or modified by the appellate court unless it appears that an obvious error was committed in applying the law, or some serious or important mistake in the consideration of the evidence. (Warren v. Burt, 58 Fed. 101; Loan Co. v. McClure, 78 Fed. 209; North Am. Expl. Co. v. Adams, 104 Fed. 404; Ins. Co. v. Wright, 126 Fed. 82; Development Co. v. Mitchell, 138 Fed. 285; Tilghman v. Proctor, 125 U. S. 136; 129 U. S. 512; 145 U. S. 132.) Under the statutes of this state there is no authority for recording a copy of a location notice unless it is verified. The location notice filed by the defendant and predecessor were not verified or acknowledged so as to be entitled to record. The evidence shows but one valid certificate of location and that is the location of the claim of the plaintiff, defendant in error here. Discovery of mineral is necessary to a valid location. The first and only discovery of oil on

the ground in controversy was made on behalf of the "Aboriginal" claim June 28, 1906. The evidence of any alleged prior discoveries was not sufficient to establish such a discovery as the law requires. (Oil Co. v. Oil Co., 98 Fed. 673; Sharkey v. Candiani, 7 L. R. A. (N. S.) 763; Whiting v. Straup, 95 Pac. 849.) This case was decided by the trial court in accordance with the principles announced by this court in Whiting v. Straup. A location notice may refer to sub-divisions of the United States survey for the boundaries of the claim, although such a survey has never been approved. (Sharkey v. Candiani, supra; Gird v. Oil Co., 60 Fed. 531.) It is not essential that the location notice or the certificate contain any description of the stakes or other markings of boundary. The affidavit of C. A. Dorn, in connection with the certificate of location and proof for patent, admitted without objection, shows not only the United States survey of the claim, but states that substantial posts were in place at the time of posting and discovery.

Upon the evidence it is clear that no discovery was made in defendant's 52-foot well. The defendant having elected to apply the oil when first discovered in the well supposed to be on the dividing line between his two claims to the claim embracing the southeast quarter of the section, the claim embracing the ground in controversy is left without any discovery. (Phillips v. Brill, 95 Pac. 856.) But from the testimony of the County Surveyor it appears that the well was not located on the dividing line between the two quarter sections, but was altogether on the southeast quarter of the section. The only proof upon the trial as to citizenship of the locators was by way of affidavits with proper verifications, filed in the contest commenced in the United States Land Office. These papers with the adverse claim showing that the locators were and are citizens have become, without objection of counsel, a part of the evidence in the case, and is sufficient under the circumstances to show citizenship. (Lindley on Mines, Sec. 227.) The location of defendant in error was made in good faith, and it was in

possession and prosecuting with due diligence its work towards discovery, and it was therefore fully protected by law against all forms of forcible, fraudulent, surreptitious, or clandestine entries and intrusions upon his possession. (Miller v. Chrisman,. 73 Pac. 1083; Whiting v. Straup, supra.)

SCOTT, CHIEF JUSTICE.

On May 5, 1906, the plaintiff in error, defendant below, filed his application in the U. S. Land Office at Evanston, Wyoming, for a patent to a mineral claim known as the Goodwill No. 2 oil placer mining claim, embracing the NE¼ of Section 12, Township 15 North, of Range 118 West, inclusive of improvements thereon. On July 3, 1906, and within the 60-day period of publication of notice of the application the defendant in error, plaintiff below, duly filed its protest and adverse claim to the land embraced in the application, whereupon further proceedings in such land office were stayed to await the determination of a court of competent jurisdiction of the right of possession to said described lands and premises, and thereupon this action was commenced.

The plaintiff by its petition claims title subject only to the paramount title of the United States to the land in controversy by discovery of petroleum thereon and location thereof as the "Aboriginal" mining claim on April 1, 1901, by and through mesne conveyances from such locators and its predecessors in interest and by keeping up the annual assessment work of $100 thereon each year since such discovery and location. It also alleges that it and its lessee on June 28, 1906, made a further and additional discovery of petroleum on said claim and by virtue of this discovery notice was properly posted and an additional certificate of such location was on July 3, 1906, filed for record in the office of the County Clerk and Ex-Officio Register of Deeds of the County of Uinta, that being the county wherein the land is situated, as a further compliance with the mining laws of

the United States and of the State of Wyoming. The de-
fendant by his answer puts the averments of the petition in
issue in so far as they affect plaintiff's right of possession
and claims adversely the right of possession subject only to
the paramount title of the United States by reason of the
alleged location on October 23, 1903, by his predecessors in
interest upon a discovery of petroleum thereon on or prior
to said date, properly staking the ground and recording a
certificate of location of the "Goodwill No. 2" mining claim,
and the performance each year thereafter of the required
annual assessment labor thereon. He also alleges that he
and his predecessors in interest on December 23, 1905,
made a further and additional discovery of petroleum on
the said "Goodwill No. 2" mining claim and by virtue of
such additional discovery properly posted a notice thereof
on the claim and on January 3, 1906, filed a further and
additional certificate of such location in the office of the
County Clerk and Ex-Officio Register of Deeds of Uinta
County. The plaintiff replied putting in issue the new mat-
ter alleged in the answer. The case was tried to the court
without a jury and the court found generally against the
defendant and in favor of and gave judgment for the plain-
tiff, defendant in error here, awarding it the possession of
the land in dispute and that it was entitled to a patent for
the Aboriginal oil placer mining claim. Motion for a new
trial was made, which the court overruled, and the defendant
brings the case here on error.

It is assigned as error that the finding and judgment are
not supported by the evidence. It is conceded by the de-
fendant in error in its brief that at the time of locating the
Aboriginal claim, to-wit: on April 1, 1901, the land em-
braced therein was unoccupied public land of the United
States and that no discovery of oil had been made on the
claim, nor was any made until June 28, 1906, upon drilling
to a depth of 468 feet. On July 2, 1906, the original notice of
location of the Aboriginal claim was re-posted on the derrick
over this well containing these additional words: "Further

and additional discovery of petroleum, made June 28, 1906, on claim above described, by the Chicago-Wyoming Oil Corporation, Lessee." On July 3, 1906, an additional certificate of location, subscribed and sworn to by Carroll A. Dorn, setting forth that substantial posts were in position marking the boundary of said claim, giving the date of discovery, the name of the claim, the names of the original locators, the date of location, that said locators are and were citizens of the United States, the number of acres and legal description of the claim, was filed and recorded in the office of the County Clerk.

The defendant in error claimed the right of possession by mesne conveyances from the original locators of the Aboriginal claim and as such the right to file the additional or amended location certificate to the original location certificate of that claim.

One of the essential requirements of a valid location of a mining claim is that there shall be a discovery of mineral upon the ground. (Sec. 3474, Comp. Stat.; Columbia Min. Co. v. Duchess Min. Co., 13 Wyo. 244, 79 Pac. 385; 27 Cyc. 555.) It is here conceded and the evidence shows that there was no discovery of petroleum upon the land in controversy under the Aboriginal location until June 28, 1906. The plaintiff in error claims prior discovery and location of the claim as the Goodwill No. 2 by Charles O. Richardson et al., his predecessors in interest. He contends that he made a valid discovery of oil on October 23, 1903, by drilling a well which we here designate as Well No. 1 on the boundary line between this claim and an adjoining claim on the south, such line bisecting the well so drilled, and making several discoveries of oil therein, one at the depth of 498 feet, which he selected as the discovery to validate the claim for the southeast quarter of the section, while another and separate discovery of oil on October 23, 1903, in the same well at the depth of 560 feet was selected to validate the claim here in question known as the "Goodwill No. 2," recorded January 4, 1904.

The exact location of this well was in dispute. The evidence of the County Surveyor, who made a survey of the property on December 2, 1905, after the well was sunk, tends to show that the quarter corner on the west boundary of Section 12 had been moved 22.6 feet south of where it had been originally established by the United States official survey, and that this well by such government survey was 11 feet south of and off of the northeast quarter of the section. The court's finding was in favor of the plaintiff and this evidence supports such finding to the effect that such discovery was not made within the boundaries of the Goodwill No. 2 and upon the land here in controversy. A discovery for the purposes of the location of a mining claim must be within the limits of the claim sought to be located. (27 Cyc. 557.) That being the law, and the discovery not being on or within the limits of the claim, rendered the location based thereon void. (Nevada Sierra Oil Co. v. Miller (C. C.), 97 Fed. 681, 688.) The question of the rights which would obtain by reason of discovery on the dividing line between two mining claims or as to whether different discoveries in such well could be accredited to the different claims as here attempted to be done is not in view of the finding presented by this record.

The plaintiff in error concedes that the defendant in error made discovery of oil on the Aboriginal oil placer mining location and within its limits on June 28, 1906, but claims a second prior discovery on December 23, 1905, in a well which he sunk within the area in dispute on the Goodwill No. 2 to the depth of 52 feet and discovery of oil therein. As to whether or not discovery of oil was made in this well was a question of fact and the burden of proving it was upon the defendant (Costigan on Mining Law, 161; Sands v. Cruikshank, 15 S. D. 142, 87 N. W. 589), and while it may be said that discovery should chronologically precede the acts of location it may follow instead of preceding such acts, and will be held good as against all who

have not acquired intervening rights. (Costigan on Min. Law, p. 160; Beals v. Cone, 27 Colo. 473, 62 Pac. 948, 83 Am. St. Rep. 92; Ervin v. Perigo, 93 Fed. 608, 35 C. C. A. 482; Lindley on Mines, Sec. 330.) It is undisputed that the well was sunk about 25 feet north of Well No. 1 heretofore referred to and on the land in controversy. It is contended by the plaintiff in error that the evidence is insufficient to support the finding adversely to his contention that the alleged discovery was sufficient to validate the location of the Goodwill No. 2. Youngburg, a witness for defendant, testified as follows:

"Q. In drilling this 52-foot hole did you speak about finding a two-foot shale?

"A. I don't know whether it was shale or sand rock. I couldn't say which.

"Q. At what depth was this?

"A. About 38 feet.

"Q. About what time in the afternoon was it you struck this?

"A. In the morning, about half-past eight.

"Q. And when did you find oil?

"A. At four o'clock.

"Q. And was this after you were through the shale?

"A. Yes.

"Q. And were you then drilling through the shale, did you say up to the time you found the oil?

"A. Yes.

"Q. And the oil was found beneath the shale?

"A. Yes.

"By the court:

"Q. What quantity of oil did you find there?

"A. We found the quantity that we could see on water.

"Q. Did you find it in such quantity that you could bail some of it out?

"A. No, we couldn't exactly bail it. We bailed the water used for drilling and in that was mixed the oil.

"Q. Then the only evidence of oil you had in the 52-foot well was the oil you saw on the water that you bailed out of the well?

"A. Yes, during the drilling.

"Mr. Ausherman.

"Q. Are you sure, Mr. Youngberg, that this was not the usual soapy substance that came from shale?

"A. I think it was not.

"Q. Do you know?

"A. Well, I couldn't state that."

This evidence did not establish the fact that there was oil found in this well, or if found that it was sufficient in quantity to constitute a discovery or was more than a mere seepage. It was found at a depth of 41 feet after drilling through a three-foot layer of shale and the well was bored to a depth of 52 feet or 11 feet beyond where the alleged oil was found. This witness could not say that it was the usual soapy substance that came with the shale or not. Another of defendant's witnesses testified practically the same and also that he was unable to swear whether it was oil or a soapy substance from shale that is found in that country. A number of other witnesses were sworn and testified for the defendant to the effect that it was oil. L. E. Nebergall, a witness for the plaintiff, testified that he had been engaged in drilling oil wells in different localities for 20 years, and that he had drilled wells in the vicinity of the NE¼ of Section 12, Township 15 North, Range 118 West, and had finished drilling the Jager oil well for the owners in the SW¼ of that section, and that from his experience and knowledge of that field the formation at that locality was not such as to disclose a finding of oil of any kind at a depth of from 60 to 100 feet and that there was no finding of oil made in well No. 1 referred to at the depth of 50 or 60 feet, as had been testified to, and that from his knowledge gained from drilling in that vicinity the first oil sand was and is at a depth of over 400 feet. That in the drilling of the Jager well on the SW¼ of said section he had taken

charge after it had been sunk 1,000 feet, and that he bailed the first oil that ever came out of that well; that the crew before he took charge got what they thought to be oil, but it was shale oil, which is not oil and which is "an indication that would sour a man to go ahead and look further." One Petrie was sworn as a witness on behalf of the plaintiff and testified that he had followed the oil business for 17 or 18 years and for the last three years in the Spring Valley oil field, in which is situated the property here in controversy. He testified from his experience that the formation he found there contained no oil at a depth less than 60 to 100 feet. Being asked at what depth it was found, he answered: "I never found oil under 468 feet—that is as close to the top, but they had shale—a shale grease, which looks quite a bit like oil. Q. And did you find such conditions in the Spring Valley field? Ans. Every hole I have worked on there was shale. People who would come in the rig would say, 'You have struck oil.' We would say, 'Not in paying quantities; we will still go on down.' Q. And it would be nothing but shale grease? Ans. That is all. Q. Is this shale grease an indication of oil? Ans. No, sir."

In Nevada Sierra Oil Company v. Home Oil Company (C.C.), 98 Fed. 673, a discovery of oil was in question and the court said: "Mere indications, however strong, are not, in my opinion, sufficient to answer the requirements of the statute, which requires, as one of the essential conditions to the making of a valid location of unappropriated public land of the United States under the mining laws, a discovery of mineral within the limits of the claim. Indications of the existence of a thing is not the thing itself." It will be observed in the case here that there was a substantial conflict in the evidence as to the character of the substance found in the well. On the one side it was claimed to be oil, and on the other that it was not oil, but a substance known and denominated as shale grease. Upon this state of the evidence we can not say that the court erred in finding against the defendant on the issue of discovery. The question of

the sufficiency of this discovery was for the trial court and there was sufficient evidence to support the finding of the court. This we think disposes of any claim of the defendant to affirmative relief establishing in him the right of possession to the land in dispute. He had acquired no intervening right which would prevent the plaintiff from filing an amended or additional certificate to the original location certificate of the Aboriginal mining claim. "The original certificate and the amendment must be construed together, and if sufficient when so construed the location record will be valid, although neither standing alone would be sufficient." (27 Cyc. 575; Duncan. v. Fulton, 15 Colo. App. 140, 61 Pac. 244.) It is provided by Sec. 3459, Comp. Stat. 1910, that "Whenever it shall be apprehended by the locator, or his assigns, of any mining claims or property heretofore or hereafter located, that his or their original location certificate was defective, erroneous, or that the requirements of the law had not been complied with before the filing thereof, or shall be desirous of changing the surface boundaries of his or their original claim or location, or of taking in any part of an overlapping claim or location which has been abandoned, or in case the original certificate was made prior to March 6, 1888, and he or they shall be desirous of securing the benefit of this law, such locator or locators, or his or their assigns, may file an additional location certificate in compliance with and subject to the provisions of this chapter; Provided, however, That such relocation shall not infringe upon the rights of others existing at the time of such re-location, and that no such re-location, or other record thereof, shall preclude the claimant or claimants from proving any such title or titles as he or they may have held under any previous location." (Slothower v. Hunter, 15 Wyo. 189, 88 Pac. 36.)

The plaintiff succeeded to the interest of the original locators and upon the facts were privileged under this section upon making discovery on June 28, 1906, to amend or file an additional certificate to show the date of discovery

and having done so secured the right of possession as such amendment did not, as already stated, infringe on the rights of the defendant. (27 Cyc. 550, 575; Sec. 354, 1 Snyder on Mines.)

It is urged that the amendment was not preceded by re-staking the claim, nor giving it a name. This was not necessary. (Sec. 399, Snyder on Mines.) There is evidence in the record tending to show that the claim when originally located was properly staked and named, and otherwise properly located, except that there was no discovery, and when discovery was afterward made an addition to the original certificate of location was filed. The original certificate gave the name and taking the original and additional certificate together the date of discovery was given and the claim was properly identified by name, staking, posting of notice and referred to by legal sub-division.

It is here urged that there is or was no proof of the citizenship of the original locators of the "Aboriginal" through which by mesne conveyances the company coupled with its discovery on June 28, 1906, claimed title, and that for that reason there is a failure of proof for which a new trial should have been granted. If this contention be correct it would not upon the facts entitle the defendant or applicant for the patent to affirmative relief. (Sherlock v. Leighton, 9 Wyo. 297, 309, 63 Pac. 580, 934.) In that case this court said: "Proof of citizenship in an adverse suit is required only to enable a party to recover judgment in his own favor." * * * "The absence of such proof may prevent a recovery by the one party, but it does not operate to authorize a judgment, for that reason alone, in favor of his adversary."

Upon the trial of the case there was admitted in evidence without objection the original and amendment or additional location certificate of the Aboriginal oil placer mining claim, and which latter was based upon the discovery made June 28, 1906. The first or original location certificate is recited in the additional certificate and gives the individual names

of the locators followed by these words, "each being a citizen of the United States, over the age of twenty-one years." To this certificate is attached the following affidavit, viz: "The State of Wyoming, County of Uinta, ss.   Carroll A. Dorn being duly sworn deposes and says that he has read the above and foregoing certificate of location; that he knows the contents thereof and that the same are true." (Signed) Carroll A. Dorn, and followed by the certificate of the notary before whom the oath was taken.

We know of no statute requiring such affidavit to give validity or to entitle an original certificate or an amendment or addition thereto to be recorded.   We are, however, of the opinion that the recorded certificate of a location is prima facie proof of the facts therein contained in an adverse proceeding as well as proof of the compliance of the law in making the record and the date thereof. (Sec. 227, Lindley on Mines.)   When citizenship is in issue it should be proven as any other fact in the case, id., and may be established by the affidavit of the party or a duly authorized agent.   (Sec. 2321, R. S., U. S.;  U. S. Comp. St. 1901, p. 1425.)   The recital in the certificate to the effect that the original locators were each citizens of the United States and over the age of twenty-one years coupled with other facts might raise a presumption of such citizenship.   The Supreme Court of Arizona said in Jantzen v. Arizona C. Co., 3 Ariz. 6, 7, 20 Pac. 93, 94: "It will be presumed that a man being a resident of the United States, and who has made a mining location, was a citizen of the United States, * * * when it appears that he recorded near the time a location reciting these facts. Such evidence will make out a prima facie case."   In the case here Dorn's affidavit to the additional certificate, supra, though not required by the statute, was to the effect that the original locators of the Aboriginal oil placer claim were each citizens of the United States.   He was plaintiff's agent and his affidavit was made in its behalf and introduced and received in evidence without objection in the

trial of the case. Such affidavit in connection with the
original and additional certificate was the only evidence on
this subject and being unobjected to on the specific ground
here sought to be raised was prima facie proof of the citi-
zenship of such locators. Further than this no objection
was made in the court below that these locators were not
citizens or that the fact of their citizenship was not shown.
This court held in Sherlock v. Leighton, supra, that such
objection could not be raised in the appellate court for the
first time, and cited O'Reilly v. Campbell, 116 U. S. 418,
6 Sup. Ct. 421, 29 L. Ed. 669. The language of the late
Justice Field in delivering the opinion of the court in that
case is pertinent. "It is true that the mineral lands of the
United States are open to exploration and purchase only
by citizens of the United States, or by those who have de-
clared their intention to become such; and had the objec-
tion been taken in the court below that such citizenship of
the plaintiffs had not been shown, it might, if not obviated,
have been fatal. There is, however, nothing in the record
to show that it was raised below. Proof of citizenship, in
proceedings of this kind, may consist, in the case of an in-
dividual, of his own affidavit thereof, and in the case of an
association of persons unincorporated, of the affidavit of
their authorized agent, made upon his own knowledge, or
upon information and belief. (Rev. Stat., Sec. 2321; U.
S. Comp. St. 1901, p. 1425.) The objection to the want
of proof of that fact, if taken below, might have been met
at once, if, indeed, the plaintiffs are citizens. The rule is
general that an objection which might be thus met must
be taken at the trial or it will be considered as waived, ex-
cept as to matters going to the jurisdiction of the court.
The parties to this controversy own adjoining claims, and
it is probable that the citizenship of each was known to
the other, and, therefore, no proof on the subject was re-
quired. Be that, however, as it may, the objection, in ac-
tions of this kind, cannot be taken in this court for the
first time." The case here seems to have been tried upon

the theory that the locators were citizens of the United States and if that question was not put in issue and tried in the lower court it cannot be raised here for the first time. By failure to raise the question at the proper time and place it will be deemed to have been waived by the parties.

Other questions have been presented on the briefs, but in view of the conclusions reached upon the questions herein discussed it becomes unnecessary to consider them.

We are of the opinion that upon this record the finding and judgment of the trial court is supported by the evidence and that there is no prejudicial error shown. The judgment will be affirmed.                    *Affirmed.*

POTTER and BEARD, JJ., concur.

### ON PETITION FOR REHEARING.

SCOTT, CHIEF JUSTICE.

The plaintiff in error on February 7 and 8, 1913, filed petitions for a rehearing in this cause. The decision was rendered January 7, 1913 (128 Pac. 881), and the petitions were each filed more than thirty days thereafter. Rule 23 (104 Pac. XIV) of this court is in part as follows: "Application for re-hearing of any cause shall be by petition to the court, signed by counsel, briefly stating the points wherein it is alleged that the court has erred. Such petition shall be filed within thirty days after the decision is rendered * * *." Excluding the day on which the decision was rendered the petitions in this case were filed on the 31st and 32nd days thereafter. Rule 23 having been adopted by this court has the force of a statutory enactment. (Sec. 881, Comp. Stat. 1910.) In Bank of Chadron v. Anderson, 6 Wyo. 536, 48 Pac. 197, there was a petition for rehearing filed after the expiration of the time allowed by the rule. This court held that the petition for rehearing was not properly before it for consideration. We have, however, examined the questions presented and find

that they were considered and determined in the opinion filed.  The petitions will be denied.     *Rehearing denied.*

POTTER, J., and BEARD, J., concur.

SALES—PAYMENT—BURDEN OF PROOF—SUFFICIENCY OF EVIDENCE.